UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ISABEL ZELAYA, et al.,     )
     )
     Plaintiffs,     )
     )     Civil Action No 3:19-CV-62-TRM-SKL
v.     )
     )
ROBERT HAMMER, et al.,     )
     )
     )
     Defendants.     )

## RESPONSE TO PLAINTIFFS' SUBSTITUTE MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

Defendants Robert Hammer, David Vicente Pena, Francisco Ayala, Billy Riggins, Anthony Martin, Matthew Grooms, Jerrol Partin, Theodore Francisco, Travis Carrier, Trevor Christensen, Glen Blache, Brenda Dickson, George Nalley, Clint Cantrell, Ricky Thornburgh, Jonathan Hendrix, Ryan Hubbard, Wayne Dickey, James Liles, Michael Perez, Keith Hale, Dennis Fetting, Deni Bukvic, Kashif Chowhan, Blake Diamond, Paul Criswell, Jeffery Klinko, Jeffery Schroder, David Lodge, Wayne Hinkle, Connie Stephens, Tommy Pannell, Shannon Hope, Troy McCarter, Bradley Harris, Joshua McCready, Ronald Appel, Bobby Smith, Robert Whited, Trey Lund, Michelle Evans, Steven Ledgerwood, Christopher Cannon, John Heishman, Aunrae Navarre, Ricky Smith, Matthew Moon, Jason Miller, Jeff Bednar, and Austin Williams, all of whom are agents of a component or sub-component of the Department of Homeland Security ("DHS") (hereinafter referred to collectively as "the DHS Defendants"),[1] Nicholas R. Worsham,

---

[1] The DHS Defendants include all of the individual DHS agents named in this action, except John Witsell. Defendant Witsell is also a DHS agent, but he is represented by separate counsel.

and the United States, by and through Francis M. Hamilton III, Acting United States Attorney for the Eastern District of Tennessee, hereby submit the following Response to the Plaintiffs' Substitute Motion for Leave to File a Fourth Amended Complaint (Doc. 389).[2]

## I.

### <u>INTRODUCTION</u>

The primary purpose of Plaintiffs' motion to amend is to add forty-one (41) agents of the Internal Revenue Service ("IRS") as defendants. Plaintiffs originally proposed naming sixty-nine (69) agents (Doc. 369-1, Prop. Fourth Am. Compl., PageID# 3249-3320), but, following additional discovery, they have now reduced that number by twenty-eight (28) agents. The Plaintiffs' willingness to remove twenty-eight agents from the original list of proposed defendants is appreciated. However, Defendants respond in opposition to the Plaintiffs' motion because the addition of forty-one new defendants will unnecessarily delay this litigation and will likely affect the Scheduling Order entered in this case.[3] Defendants are eager to defend the allegations that have been asserted against them and wish to avoid any unnecessary delays in this case.

---

[2] This response refers to the DHS Defendants, Defendant Worsham, and the United States collectively as "Defendants." That term, as used in this response, does not include Defendant Witsell or any of the proposed defendants.

[3] The delay will result in part from the process that must follow if new defendants are added in this case. For example, the new defendants will have to retain counsel, be served, and respond to the amended complaint. This process may involve requesting representation from the Department of Justice, which takes time, or locating and retaining their own counsel. Any new defendants also will have to be served with process. Even if the new defendants are willing to permit their counsel to accept service on their behalf, counsel will have to obtain express permission from each one of them before doing so. And, once the new defendants are properly served, counsel will have to consult with each new defendant before preparing a response to the complaint. These efforts will take time and resources that could otherwise be directed to litigating the case, thereby necessarily resulting in a delay to the current schedule of when the parties hope to begin depositions, end discovery, and prepare motions, among other things. The likelihood for delay and the amount of the delay both increase as the number of new defendants increases.

2

Plaintiffs have not alleged sufficient facts to add any new defendants to this case. If discovery yields sufficient facts to allege conspiracy claims against any new defendants, then Plaintiffs can move to amend to add those defendants at that time. Therefore, the Plaintiffs' request to add new defendants should be denied. Alternatively, if Plaintiffs are permitted to add defendants at this time, then leave should be granted to add, at most, only seven (7) IRS agents as defendants.[4]

## II.

## STATEMENT OF RELEVANT FACTS

Defendants' counsel agreed to obtain and share as much information as they could with Plaintiffs' counsel so that Plaintiffs could evaluate who among the original group of sixty-nine additional agents might conceivably be named as defendants.[5] As part of that process, Defendants' counsel shared information with Plaintiffs' counsel regarding the involvement and activities of the IRS agents as well as the primary participants in the criminal investigation and the planning of the operation on April 5, 2018, who were already defendants – Nicholas R. Worsham (IRS), Travis Carrier (DHS), and Trevor Christensen (DHS). In addition to this informal information, which is discussed below, Plaintiffs also had in their possession written discovery that was provided before the case was stayed – the DHS Enforcement Operation Plan, the DHS Worksite Checklist, a personnel roster, an investigation conducted by the DHS Office of Professional Responsibility ("OPR") concerning Defendant Witsell's encounter with Plaintiff Guerrero, video recordings from

---

[4] The Defendants' position is that no one engaged in a conspiracy to deprive Plaintiffs or any of the proposed class members of their constitutional rights. Defendants are confident that the evidence in this case will support their position. Nothing contained in this response should be read as conceding that anyone should be a defendant as it relates to liability for any of the claims. Furthermore, nothing contained in this response should be read as a waiver of any defenses that any current or proposed defendants may have.

[5] Two DHS agents were included in the group of sixty-nine agents, but the Proposed Fourth Amended Complaint does not name either of those agents as defendants.

Southeastern Provision's security cameras containing hours of footage shot from many points in the facility on the day of the operation, and drone footage from the investigation – as well as documents produced by the IRS in response to a subpoena that Plaintiffs served in this case. As a result of that subpoena, the IRS produced 605 pages of emails (with redactions), 521 pages of photographs, the memorandum of the interview of James M. Brantley, and 120 pages of investigation documents, including a Search Warrant Checklist, a Computer Investigative Specialist Request for Assistance, and the same personnel roster produced by DHS (with redactions).[6] Defendants also produced video from the body cameras worn by officers of the Morristown Police Department ("MPD") during the operation.

The information establishes that Defendants Worsham, Carrier, and Christensen were the primary case agents for their respective agencies during the criminal investigation and that they were the primary people who planned the operation. Four meetings occurred wherein Defendants Worsham, Carrier, and Christensen discussed plans for the operation. The first meeting occurred in September 2017 at the United States Attorney's Office ("USAO") in Greeneville and included two Assistant United States Attorneys ("AUSAs") from the criminal division and Tim Southerland from the Tennessee Highway Patrol ("THP"). (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3697.) The second meeting occurred in January 2018 in Morristown and included Mr. Southerland. (*Id.*) The third meeting occurred on or about February 7, 2018 at the USAO in Greeneville and included the same two AUSAs who attended the first meeting, Mr. Southerland, Dan Morton (THP), Robby Greer (THP), and Chris Blair (MPD). (*Id.*, PageID# 3697-98.) The fourth meeting occurred on or about March 5, 2018, in Morristown and included Richard Nelson

---

[6] Plaintiffs also received documents from the Tennessee Highway Patrol through a request under Tennessee's Open Records Act. (Doc. 389, Sub. Mot. for Leave to File a Fourth Am. Compl., PageID# 3529-30.)

(IRS), Gregory Martin (IRS), Defendant Ronald Appel (DHS), Mr. Southerland, and Mr. Blair.[7] (*Id.*, PageID# 3698.)

A small, pre-operation briefing occurred on April 4, 2018, that involved the case agents (Defendants Worsham, Carrier, and Christenson) and the various team leaders for the operation. Those team leaders included Gregory Martin (IRS), Joseph Stansfield (IRS), Donald Lemons (IRS), David Martin (IRS), Defendant Dennis Fetting (DHS), Mr. Southerland, and Mr. Greer.[8] (*Id.*) That briefing was followed by a large-group, pre-operation briefing that was also conducted on April 4, 2018, in the ballroom of a hotel in Knoxville. (*Id.*) Most of the participants in the operation attended the large-group briefing.[9] One of the AUSAs from the criminal division who had been involved in the other meetings also attended the large-group briefing.

The plan for the operation was completed before both briefings on April 4, 2018, so the briefings were not planning meetings like the four meetings discussed above. The large-group briefing provided the participants with information and instructions concerning the operation and what to expect and do. The information provided at that briefing was conveyed verbally and through a PowerPoint presentation that had been created by Defendants Worsham, Carrier, and Christensen with additional input from Mr. Southerland. The PowerPoint presentation, which has

---

[7] The Proposed Fourth Amended Complaint states that Defendant Dennis Fetting attended the fourth meeting on or about March 5, 2018, and it does not mention Defendant Appel. (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3698.) However, the information provided to Plaintiffs' counsel identifies Defendant Appel, not Defendant Fetting, as an attendee of that meeting.

[8] The Proposed Fourth Amended Complaint does not list Defendant Carrier as an attendee of the small-group briefing (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3698), but Defendant Carrier was present. Mr. Nelson may have been present as well.

[9] Two IRS agents did not attend the large-group briefing on April 4, 2018. One of those agents missed his scheduled flight, so he ended up arriving late and after the briefing was over. The other agent arrived as the meeting ended. Two IRS agents do not recall the briefing.

also been produced to Plaintiffs, contained nineteen (19) slides, including the title slide. The slides contained these statements, among others:

- "Estimate 80-100 employed at Southeastern Provisions. Approximately ½ of the employees are suspected illegal aliens."

- "All employees paid cash."

- "Follow your agencies[¹] use of force policy."

- "Keep moving . . . . . safely."

- "All employees will be handled as deemed appropriate by agents. Can be temporarily detained if needed."

- "Employees will have knives, saws, etc."

- "Employees inside the buildings will be kept inside until they are handed off to the employee control team."

- "Employees outside of the buildings will be handled by outside cover and/or the employee control team."

- "Perimeter teams and entry teams **will not** take control of employees who are encountered outside upon arrival."

- "The number and location of employees is the biggest contingency."

- "Majority of personnel will return to the National Guard building to assist with processing the employees."

- "Be flexible."

- "Be safe."

One slide contained a link to the IRS Search Warrant Plan. That plan contained these statements, among others:

- Under "Secondary Objectives," "[p]rocess and identify employees to determine legal status."[10]

- "All employees will be escorted from the building and controlled by an Employee Control Team until they can be properly identified and processed. A secondary sweep of all building[s] will be conducted to search for employees who may be hiding."

- "Additional IRS-CI personnel will remain at the National Guard to assist with interviews/questionnaires of any employees who are transported to this location for processing."

- "Once the location is secured, the employees will be taken outside and handed off to members of the employee control teams. The employee control teams will take the employees to designated areas where the employees will be identified and processed."

Defendants' counsel also tried to determine the roles that the proposed defendants played in the operation. Other than the five individuals who were involved in one or more of the four planning meetings and/or the small-group briefing mentioned above, only two proposed defendants were arguably involved in the planning of the operation – Christopher Altemus, Jr., the Acting Special Agent in Charge ("SAC") at the time, and Carilyn Peters, the Assistant Special Agent in Charge ("ASAC"). As supervisors, Mr. Altemus and Ms. Peters were responsible for reviewing and approving the operation, but neither one of them had any direct, substantive interaction with the THP or the MPD (other than basic introductions and/or greetings on April 4, 2018, or April 5, 2018), and neither one of them detained any workers during the operation.

---

[10] The DHS Enforcement Operation Plan, under "Operational Objectives," included "[i]nterview/identify suspected illegal employees and hiring officials."

7

Aside from the IRS agents who attended one or more of the four planning meetings and/or the small-group briefing discussed above, only two IRS agents indicated that they interacted with anyone from the THP. One agent was in the office when she was summoned to the meat-packing area and asked by someone from the THP to assist in a brief pat down of a female subject who had already been detained. The agent conducted the pat down and returned to the office. During the large-group briefing on April 4, 2018, the other IRS agent recognized someone from the THP whom he had worked with on a previous, unrelated operation. The agent greeted the person from the THP and engaged in brief small talk. The remaining IRS agents indicated that they did not interact with anyone from the THP or did not remember if they had. Some of those who said that they did not remember any interactions also stated that if they had interacted with someone from the THP, the interaction would have been simple introductions or casual and even personal conversations unrelated to work or to the operation.

Aside from the IRS agents who attended one or more of the four planning meetings and/or the small-group briefing, only one IRS agent remembered interacting with someone from the MPD. However, he also indicated that his interaction was on a personal level and unrelated to work or the operation. The other agents either did not interact with anyone from the MPD or did not remember if they had. Some of those who said that they did not remember any interactions also stated that if they had interacted with someone from the MPD, the interaction would have been simple introductions or casual conversations unrelated to work or to the operation.

Plaintiffs' counsel specifically requested if any of the IRS agents fell into one of the following categories: (1) anyone who participated in the operation on April 5, 2018, but did not attend the large-group briefing on April 4, 2018, or any of the four other meetings and/or small-group briefing; (2) anyone who stayed in the office of the plant and/or only handled documents

8

during the operation; and (3) anyone who only encountered workers at the armory after the operation. Plaintiffs' counsel indicated that they would consider not including as defendants anyone who fell into one of these three categories. After compiling this information, Defendants' counsel identified forty-two (42) agents who fell into one of the three categories, which left twenty-seven (27) agents.[11] However, Defendants' counsel also identified twenty-two (22) agents (including Mr. Altemus and Ms. Peters) who were assigned to locations outside of the building and either stayed outside for the entire operation or only entered the building after it was cleared of all workers.

## III.

## LEGAL STANDARDS

Plaintiffs are not amending their complaint as a matter of course. *See* FED. R. CIV. P. 15(a)(1). Therefore, they "may amend [their] pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "a motion to amend may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis removed).

---

[11] A few agents were not present for the operation even though they were listed on the pre-operation documents. To keep the math simple, those agents who were not present are being included in the larger group of forty-two agents, especially since they technically fall into the first category of not attending either briefing or any of the four planning meetings.

9

The conspiracy claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 are the only claims applicable to the proposed defendants. "Section 1985(3) creates a cause of action for conspiracy to violate civil rights." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). A plaintiff must prove the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). Section 1985(3) only applies to conspiracies "to deprive another of the equal protection of the laws." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). The conspiracy must be based on "some racial, or . . . otherwise class-based, invidiously discriminatory animus," *United Bhd.*, 463 U.S. at 829 (internal quotation marks omitted), and "[a] class protected by [§] 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994). The element of "an act in furtherance of the conspiracy" can be established by showing an act that was done by one of the conspirators or an act "caused to be done" by one of the conspirators. *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971).

"Section 1986 establishes a cause of action against anyone 'having knowledge that any of the wrongs conspired to be done [as described in § 1985]' and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so.'" *Thurmond v. County of Wayne*, 447 F. App'x 643, 650 (6th Cir. 2011) (*quoting* 42 U.S.C. § 1986) (alteration in original). In other words, "[§] 1986 is designed to punish those who aid and abet violations of § 1985." *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980). Therefore, liability under § 1986 is

10

derivative of § 1985(3) and cannot be established in the absence of an actual conspiracy. *Id.*; *Ruiz v. Hofbauer*, 325 F. App'x 427, 432 (6th Cir. 2009).

## IV.

## **PLAINTIFFS' CONSPIRACY ALLEGATIONS**

Throughout the Proposed Fourth Amended Complaint, Plaintiffs generally claim that each and every defendant "participated in the planning" of the operation. (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3670-3688.) However, they only provide specific facts supporting that assertion for Richard Nelson, Gregory Martin, Donald Lemons, and David Martin. They allege that each of those agents attended "planning meetings relating to the raid, along with other IRS and DHS agents and THP troopers."[12] (*Id.*, PageID# 3680-81, 3684, 3686.) Plaintiffs also provide a summary of those meetings, wherein they state the date and place of each meeting, who attended, and the agencies represented. (*Id.*, PageID# 3697-98.) Plaintiffs plead their § 1985(3) claim as follows:

> By agreeing to stop, detain, search, seize, and/or arrest Plaintiffs and the Class solely on the basis of their Latino race and ethnicity, the DHS Defendants and IRS Defendants conspired with each other and with the THP and MPD to deprive Plaintiffs and the Class of the equal protection of the laws of the United States, in violation of 42 U.S.C. § 1985(3).

---

[12] Although Mr. Stansfield is identified in the Proposed Fourth Amended Complaint as an attendee of the small-group briefing (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3698), Plaintiffs do not assert the specific allegation of attending "planning meetings relating to the raid, along with other IRS and DHS agents and THP troopers" against Mr. Stansfield (*id.*, PageID# 3682) that is alleged against the other attendees of those meetings. (*Id.*, PageID# 3680-81, 3684, 3686.)

11

(*Id.*, PageID# 3717.)[13]    Plaintiffs plead their § 1986 claim as follows: "Defendants, having knowledge of the conspiracy to violate Plaintiffs' and the Class'[s] civil rights as specified in [the § 1985(3) claim] above, willfully or negligently failed to prevent the wrongful acts complained of herein, in violation of 42 U.S.C. § 1986."  (*Id.*, PageID# 3718.)

## V.

## LEGAL ARGUMENT

Since the proposed class is comprised of Latino workers who were detained during the operation on April 5, 2018, the conspiracy must be an agreement between agents of DHS/IRS and agents of the THP/MPD to detain only the Latino workers.  The agreement must be "a single plan" with a "general conspiratorial objective," *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985), that encompasses the entire operation, not individual plans between agents pertaining to any specific worker.  Otherwise, the conspiracy claims could not be asserted on behalf of the entire class.

### A.    Plaintiffs' Request to Add the Proposed Defendants Should Be Denied on Futility Grounds.

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst. LLC*, 601 F.3d at 520 (internal quotation marks omitted).  To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim

---

[13] Plaintiffs also assert a conspiracy for "agreeing to stop, detain, search, and/or seize Plaintiffs and the Class through forceful and intrusive means, without a warrant supported by sufficient probable cause, and without individualized reasonable suspicion."  (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3717.)  However, a claim under § 1985(3) is limited to equal-protection violations based on class-based discrimination.  *United Bhd.*, 463 U.S. at 829; *Jackson*, 925 F.3d at 817.  Section 1985(3) does not apply to alleged Fourth Amendment violations.  *Burch v. Blouir*, No. 86-3239, 1987 WL 44944, at *2 (6th Cir. Oct. 5, 1987).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'. . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (*quoting Twombly*, 550 U.S. at 555, 557) (alteration in original).

Moreover, "[i]n the context of § 1985(3), plaintiffs shoulder a heavy pleading burden." *Carthan v. Snyder (In re Flint Water Cases)*, 384 F. Supp. 3d 802, 851 (E.D. Mich. 2019), *aff'd in part and rev'd in part on other grounds*, 960 F.3d 303 (6th Cir. 2020). "[T]he Sixth Circuit has indicated that '[c]ourts have traditionally viewed conspiracy suits against public officials with suspicion and disfavor' and that '[a]ccordingly, pleading requirements governing civil conspiracies are relatively strict.'" *Ibarra v. Barrett*, No. 3:05-0971, 2007 WL 1191003, at *16 (M.D. Tenn. Apr. 19, 2007) (*quoting Fisher v. City of Detroit*, No. 92-1759, 1993 WL 344261, at *5 (6th Cir. Sept. 9, 1993)) (second and third alterations in original). *See also Arsan v. Keller*, 784 F. App'x 900, 914 (6th Cir. 2019) ("Like a § 1985(3) claim, a § 1983 conspiracy claim must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. . . . This pleading standard is relatively strict.") (internal quotation marks omitted) (first omission in original). For example, "[i]n order to support a conspiracy claim, plaintiff must allege a sufficient factual basis to establish a 'meeting of the minds' on the part of the alleged conspirators." *Burrell v. MGM Grand Casino Detroit*, No. 16-CV-10568, 2017 WL 24813, at *5 (E.D. Mich. Jan. 3, 2017).

Plaintiffs' conspiracy claims against the proposed defendants would not survive a Rule 12(b)(6) motion because they do not satisfy *Iqbal/Twombly* or the strict pleading standards for § 1985(3) claims. The Proposed Fourth Amended Complaint does not provide any specific facts

13

that establish the conspiracy claims. Plaintiffs conclude that there was an agreement "to stop, detain, search, seize, and/or arrest Plaintiffs and the Class solely on the basis of their Latino race and ethnicity" (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3717), but they do not allege any specific facts to support that conclusion. They allege that meetings occurred prior to the operation during which DHS and IRS agents planned the operation with THP/MPD agents (*id.*, PageID# 3697-98), but they do not allege any facts tending to show that those agents discussed only detaining the Latino workers or entered into an agreement to do so. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("[The plaintiff] offered nothing more than the conclusory allegation that the defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive him of his civil rights."); *Mosley v. Hilton Easton Hotel*, No. 05-CV-0048, 2005 WL 1630873, at *5 (S.D. Ohio July 6, 2005) ("Although Plaintiff alleges that [a supervisor] and Plaintiff's team members discussed him when he was not present, this assertion alone falls far short of the requisite specificity that is necessary to support a conspiracy claim under [§] 1985(3)."). *See also Twombly*, 550 U.S. at 556-57 (stating in a case alleging a conspiracy under the Sherman Act that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" and that "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). Plaintiffs allege that a large-group briefing was conducted on April 4, 2018 (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3698), but they do not allege that the briefing instructed the participants to only detain the Latino workers. They allege that the proposed defendants had knowledge of a conspiracy and failed to prevent it (*id.*, PageID# 3718), but they do not allege any specific facts demonstrating how the proposed defendants knew of the conspiracy

14

or how they had the power to prevent it and failed to do so. Therefore, the Plaintiffs' conspiracy claims rest entirely on general, conclusory statements, which are not sufficient to survive a Rule 12(b)(6) motion.[14]

This case is like other cases in which courts in the Sixth Circuit have rejected conspiracy claims due to pleading deficiencies. For example, in *Brooks v. American Broadcasting Companies, Inc.*, 932 F.2d 495 (6th Cir. 1991), the plaintiff moved to amend his complaint to add claims under §§ 1983 and 1985. 932 F.2d at 496. The plaintiff alleged that

> the defendants conspired to violate [§§] 1981 and 1985 by using photographs of [him] and tape recordings of his voice "only for the reason that [he] was a black male alleged to be the friend and associate of a white male judge, who had had sexual relations with black women."

*Id*. at 497. The plaintiff "alleg[ed] that [those] actions violated his 'constitutional right of privacy.'" *Id*. "Beyond these broad statements, [the plaintiff's] pleadings did not clarify his legal basis for proceeding." *Id*. at 497-98 (emphasis removed). "The district court denied the motion to amend on the grounds that the new allegations could not survive a motion to dismiss for failure to state a claim." *Id*. at 496. The Sixth Circuit agreed:

> Defendants cannot effectively answer the allegation because there is nothing specific to answer.[15] The district court denied the claim on the basis that the claim could not withstand a motion to dismiss. The district court's grounds were that 1) [the plaintiff] failed to plead the conspiracy in detail and 2) [the plaintiff] failed to allege any violation of a federally protected right, as required under [§] 1985(3). More generally and more simply, however, we conclude that the [§] 1985 claim fails on the same

---

[14] While Plaintiffs allege that only Latino workers were detained (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3702-03), the conspiracy claim is focused on what Defendants agreed to do, not on what allegedly occurred.

[15] Here, a defendant could admit the few, specific, factual allegations related to the conspiracy claims that are contained in the Proposed Fourth Amended Complaint (that certain people met and planned the operation and that a large-group briefing was conducted on April 4, 2018) without admitting liability under §§ 1985(3) or 1986. That realization underscores the conclusion that the Plaintiffs' conspiracy claims are not sufficiently pled to survive a motion to dismiss.

15

ground as the [§] 1981 claim: the allegations are too vague and conclusory
to withstand a motion to dismiss.

*Id.* at 499.

In *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984), the plaintiff asserted claims under
§§ 1985(2), 1985(3), and 1986.  The plaintiff "alleged that the basis of the conspiracy was the
failure of the township to adequately maintain and control its police officers," which led to her
son's death in a police-involved shooting.  739 F.2d at 240, 245.  The Sixth Circuit held that "[t]he
district court's dismissal of the § 1985(2) claim was correct, since even in its most liberal
construction, [the] plaintiff's complaint merely alleged broad conclusory negligence language void
of the factual allegations necessary to support a conspiracy theory."[16]  *Id.* at 245.

In *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971), the plaintiffs asserted claims
under §§ 1983, 1985(3), 1986, and 1988 arguing "that their constitutional rights were violated
when they were suspended from the University without a hearing."  443 F.2d at 122.  The
conspiracy claims were pled as follows:

> This is an action . . . to recover damages from the defendants for conspiring
> for the purpose of depriving plaintiffs of the equal protection of the laws
> and of rights, privileges and immunities under the laws and Constitution of
> the United States . . . .  Plaintiffs further allege that they have been
> suspended as a result of a conspiracy on the part of the defendants. . . .

*Id.* at 124 (internal quotation marks omitted).  The Sixth Circuit affirmed the dismissal of the
conspiracy claims:

> We hold that these conclusory allegations are not sufficient to state a claim
> under 42 U.S.C. §§ 1985(3), 1986 and 1988. . . .  There are no facts alleged
> in support of the conclusions, and we are required to accept only well

---

[16] The Sixth Circuit also affirmed the dismissal of the § 1985(3) claim "because the complaint
failed to allege a class-based conspiracy," and it affirmed the dismissal of the § 1986 claim because
the claim "was dependent upon the existence of a valid § 1985 cause of action."  *Jaco*, 739 F.2d
at 245.

pleaded facts as true . . . , not the legal conclusions that may be alleged or that may be drawn from the pleaded facts.

*Id.*

In *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987), the plaintiff "alleg[ed] that his federal constitutional rights had been violated because he had been denied sick leave compensation and injured-on-duty status in violation of 42 U.S.C. §§ 1981, 1983 and 1985 . . . ." 826 F.2d at 1535. The district court granted summary judgment on the conspiracy claims "because plaintiff's complaint contained only vague and conclusory allegations." *Id.* at 1536. The Sixth Circuit affirmed:

> Plaintiff's allegations of conspiracy are contained in two paragraphs of his amended complaint. In paragraph 37 plaintiff states that "his job termination was the ultimate result of the conspiracy of Defendants to punish Plaintiff for his refusal to whitewash his investigation of city contracts." In paragraph 49, plaintiff states that defendants "conspired against Plaintiff to unlawfully deprive him of his employment, his good name and reputation as punishment for Plaintiff's continued refusal to whitewash city contracts." A review of the allegations contained in these paragraphs clearly indicates that they are insufficient to withstand a motion for summary judgment. Plaintiff's allegations lack the requisite material facts and specificity necessary to sustain a conspiracy claim.

*Id.* at 1539. *See also Fisher*, 1993 WL 344261, at *5 ("The allegations that the defendants deprived [the plaintiff] of any rights guaranteed by the Equal Protection Clause or the Privileges and Immunities Clause are simply unsupported. . . . Since [the] plaintiff has not made sufficient allegations to support his conspiracy theory, that claim was properly dismissed on summary judgment.").

In *Ibarra*, the plaintiff alleged "that Rutherford County violated 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 when it 'conspired to deprive [him] of his constitutionally guaranteed rights' and 'refused to prevent or aid in preventing the commissions of the constitutional violations

17

complained of [by him].'" 2007 WL 1191003, at *15 (alterations in original). The district court

granted summary judgment on the plaintiff's § 1985(3) claim:

> Here, the plaintiff, in his cursory discussion of his [§] 1985(3) claim, not
> only fails to state with specificity the material facts that support each of the
> elements of this claim, but fails to even mention the elements at all. Indeed,
> to take just one element as an example, the plaintiff does not set forth any
> facts that give rise to an inference that there was a "meeting of the minds"
> or any express or implied agreement among the officers to deprive the
> plaintiff of his rights.

*Id.* at *16.[17] *See also Leisure v. Franklin County Court of Common Pleas*, No. 2:05-CV-1123,

2006 WL 1281764, at *4 (S.D. Ohio May 8, 2006) ("Plaintiff's Amended Complaint falls far short

of what is required to state a claim of civil conspiracy. It contains only conclusory allegations that

'Defendants' conspired against her to silence her whistleblowing activities. These allegations,

however, are not supported by any material facts. Plaintiff alleges no facts giving rise to an

inference that there was any 'meeting of the minds,' or any express or implied agreement among

the Defendants to accomplish a common objective. In fact, none of the Defendants named in the

caption of the Amended Complaint, except the Franklin County Municipal Court, is even

mentioned in the body of the Amended Complaint. The Amended Complaint does not identify

when the alleged conspiracy was formed or what part each Defendant played in the alleged

conspiracy. In short, Plaintiff's allegations of conspiracy are too vague and conclusory to

withstand Defendants' motions to dismiss.").

For these reasons, the Plaintiffs' allegations against the proposed defendants do not satisfy

the pleading requirements of *Iqbal*/*Twombly*, let alone the even stricter pleading requirements for

---

[17] Since there was no actionable conspiracy under § 1985(3), the district court also granted
summary judgment on the § 1986 claim. *Ibarra*, 2007 WL 1191003, at *16.

18

conspiracy claims.  Therefore, addition of the proposed defendants would be futile.  Accordingly, the Plaintiffs' request to add any of the proposed defendants should be denied.

**B.**     **Plaintiffs' Request to Add the Proposed Defendants Should Be Denied on the Grounds of Bad Faith.**

Plaintiffs have not alleged specific facts to support a conspiracy because such facts do not exist.  Given the detail by which Plaintiffs have pled their four complaints so far, and the detail by which they intend to plead their fifth complaint, and considering the amount of information that Plaintiffs' counsel has now compared to when the case was originally filed, it is reasonable to assume that if those facts existed, Plaintiffs would have mentioned them.  Indeed, the information revealed to date disproves any conspiracy.

The substance of the large-group briefing on April 4, 2018, was proper, and there was no indication of a plan to only detain Latino workers.  In fact, the pertinent documents establish that the plan was to address "all employees" (even though Defendants only suspected that approximately one half of the employees were illegal aliens) and detain them "temporarily if needed" and to only arrest the employees where probable cause existed.  The planned actions were consistent with Supreme Court precedent.  *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 95 (2005) ("We hold that [the plaintiff's] detention in handcuffs for the length of the search was consistent with our opinion in *Michigan v. Summers*, 452 U.S. 692 . . . (1981), and that the officers' questioning during that detention [regarding the plaintiff's immigration status] did not violate her Fourth Amendment rights."); *INS v. Delgado*, 466 U.S. 210, 212 (1984) (holding that "factory surveys did not result in the seizure of the entire work forces, and that the individual questioning of the respondents . . . by INS agents concerning their citizenship did not amount to a detention or seizure under the Fourth Amendment").

19

Plaintiffs should not be permitted to add any defendants to the conspiracy claims because they do not have any specific facts to support those claims. Therefore, their attempt to add the proposed defendants is made in bad faith, *i.e.*, without a good-faith factual basis. *Cf. Westmount Inc. v. Great Lakes Reinsurance SE*, No. H-19-3889, 2020 WL 6192017, at *1 (S.D. Tex. Jan. 7, 2020) ("Plaintiff may not plead a claim for which it has no good faith factual basis.") (emphasis removed) (*citing* FED. R. CIV. P. 11(b)); *Mosley*, 2005 WL 1630873, at *5 & n.1 (allowing an amended complaint to state a proper claim under § 1985(3) "if [the plaintiff] may do so truthfully within the confines of Fed. R. Civ. P. 11," which requires a party "to set forth allegations and other factual contentions that have evidentiary support or will be likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"). As a result, the Court should deny the Plaintiffs' request to add any new defendants.

**C.** **Alternatively, Plaintiffs Should Only Be Allowed to Add as Defendants the IRS Agents Who Were Involved in the Planning of the Operation.**

As stated above, the only specific factual allegations related to the alleged conspiracy contained in the Proposed Fourth Amended Complaint relate to Richard Nelson, Gregory Martin, Donald Lemons, David Martin, and Joseph Stansfield. However, those allegations merely state that those individuals (except Mr. Stansfield – *see* Footnote 12) attended "planning meetings relating to the raid, along with other IRS and DHS agents and THP troopers." (Doc. 389-2, Prop. Fourth Am. Compl., PageID# 3680-81, 3684, 3686.) The summary of those meetings contained in the Proposed Fourth Amended Complaint only provides the date and place of each meeting and the names and agency affiliation of the people who attended those meetings. (*Id*., PageID# 3697-98.) The allegations do not contain any facts that establish a conspiracy. Plaintiffs only allege that these individuals met and planned the operation, but Plaintiffs jump to the legal conclusion that a conspiracy was formed during those meetings without any supporting facts. Under the

20

Plaintiffs' approach, law enforcement from different sovereigns would be part of an actionable conspiracy every time that they meet to plan or assist in an operation.

With that said, if the Proposed Fourth Amended Complaint is read as liberally as possible in the Plaintiffs' favor and the Court allows the addition of new defendants, then the only individuals that Plaintiffs could conceivably assert a conspiracy claim against are the "planners." Although the factual allegations against them do not establish a viable conspiracy claim, the "planners" are the only potential defendants that Plaintiffs have asserted any specific facts against concerning any planning of the operation in alleged coordination with the THP or the MPD. Those individuals are most likely to have had substantive discussions with representatives of the THP and/or the MPD about the operation. To the extent that Plaintiffs could ever establish an inter-corporate agreement, it would be based on these discussions. Innocuous greetings and small talk among law enforcement at any time during the operation cannot meet the standard. Furthermore, Plaintiffs must prove a conspiracy that started at the "top" and infected the entire operation, not a conspiracy that started at the "bottom," especially since the conspiracy claims are asserted as class claims.[18]

The "planner" category includes Defendants Worsham, Carrier, Christensen, Appel, and Fetting and proposed defendants Richard Nelson, Gregory Martin, Joseph Stansfield, Donald Lemons, and David Martin. Even though there is no evidence that Christopher Altemus, Jr. and Carilyn Peters were directly involved with any of the planning meetings or any of the coordination with the THP or the MPD, they did serve as supervisors with review and approval authority such

---

[18] Assuming that two individual agents – one from DHS/IRS and the other from the THP/MPD – decided to detain a Latino worker simply based on the worker's race/ethnicity, such a conspiracy would not apply "up the chain" and turn the entire operation into a conspiracy, and it would apply only to that individual worker, not to the entire class.

that they could arguably be considered "planners" as well, if every inference is drawn in the Plaintiffs' favor at this stage. There are, at least, specific facts pertaining to these seven individuals (*e.g.*, attended planning meetings and reviewed and approved operational plans prior to the operation) that distinguish them from the large group of individuals who only participated in the operation, even if those specific facts do not adequately plead a conspiracy as a matter of law.

For these reasons, Defendants submit, as an alternative to their argument that no new defendants should be added, that Plaintiffs should only be permitted to add the "planners" as defendants at this time. If the Court allows the "planners" to be added, then seven (7) IRS agents would be added as defendants – Richard Nelson, Gregory Martin, Joseph Stansfield, Donald Lemons, David Martin, Christopher Altemus, Jr., and Carilyn Peters. Inclusion of those seven people should not result in additional, significant burdens or delays.[19]

An agent should not be considered a "planner" simply because the agent attended the large-group briefing on April 4, 2018. As discussed above, that briefing was proper as there is no evidence to even suggest a prohibited goal of the operation. Plaintiffs have not alleged otherwise, nor can they.

Plaintiffs may argue that any participants are subject to being added under § 1986 because they purportedly knew of the conspiracy and failed to stop it. This argument is flawed because, aside from the lack of the prerequisite conspiracy under § 1985(3), Plaintiffs do not have any information suggesting that a conspiracy was even communicated to the participants. As mentioned, the large-group briefing on April 4, 2018, was the only meeting concerning the

---

[19] If information is discovered that identifies other "planners" or provides a basis for including people outside of the "planner" group as defendants, then Plaintiffs can move to amend at that time. The statute of limitations for claims under § 1985(3) is one year, *Carver v. U-Haul Co.*, No. 86-6166, 1987 WL 44437, at *1 (6th Cir. Oct. 2, 1987), so any statute-of-limitations issues already exist such that waiting until further discovery is completed should not prejudice Plaintiffs.

operation that the participants attended (outside of the participants who are in the "planner" group discussed above). Therefore, the conspiracy had to have been communicated to the participants during that briefing. But, as discussed above, there are no facts to support the idea that the participants were instructed (either expressly or implicitly) during the large-group briefing to detain only Latino workers. As a result, Plaintiffs do not have a good-faith basis to assume, let alone assert, that the participants in the operation were involved in a conspiracy, knew they were involved in a conspiracy, and/or should have done something to prevent it.

In addition, § 1986 requires that the person "hav[e] [the] power to prevent or aid in preventing the commission of the [conspiracy]." 42 U.S.C. § 1986. The only people who had the power to stop the entire operation were Defendants Worsham, Carrier, and Christensen and their supervisors and arguably the people in the "planner" group discussed above. Plaintiffs cannot allege that a non-supervisory agent who showed up for the large-group briefing on April 4, 2018, and participated in the operation on April 5, 2018, had the power to prevent the entire operation from moving forward. Such an agent may have refused to be involved personally, but the agent did not have the power to prevent anyone else from carrying out the operation.

## VI.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs have not and cannot plead sufficient facts to establish their conspiracy claims under *Iqbal*/*Twombly* and/or the strict pleading standard required for conspiracy claims in the Sixth Circuit. Therefore, the Plaintiffs' request to add any additional defendants should be denied as futile. In addition, Plaintiffs do not have a good-faith factual basis to allege that a conspiracy to only detain Latino workers existed. As a result, the Plaintiffs' request to add any additional defendants should be denied on the grounds of bad faith. Alternatively, the

Plaintiffs' motion to amend should be denied to the extent that it requests to add any defendants outside of the seven (7) "planners" discussed in this response.

Respectfully submitted,

FRANCIS M. HAMILTON III
Acting United States Attorney

By:     *s/ Kenny L. Saffles*
          Kenny L. Saffles (BPR #023870)
          Leah W. McClanahan (BPR #027603)
          Assistant United States Attorney
          800 Market Street, Suite 211
          Knoxville, TN 37902
          Kenny.Saffles@usdoj.gov
          Leah.McClanahan@usdoj.gov
          (865) 545-4167

24