UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ISABEL ZELAYA, *et al.*, | ) | |
|---|---|---|
| | ) | Case No. 3:19-cv-62 |
| *Plaintiffs*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| ROBERT HAMMER, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORDANDUM AND ORDER**

Before the Court are the Internal Revenue Service ("IRS") Planner and Non-Planner Defendants'[1] motions to dismiss (Docs. 532, 538) and the IRS Non-Planner Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 541). For the reasons below, all three motions are **DENIED**.

**I.   BACKGROUND**

On April 5, 2018, IRS, Department of Homeland Security ("DHS"), Enforcement and Removal Operations, Homeland Security Investigations ("HSI"), Customs and Border Protection ("CBP"), and Immigrations and Customs Enforcement ("ICE") agents conducted a worksite raid aimed at identifying illegal immigrants at Southeastern Provisions, LLC in Bean Station,

---

[1] The IRS Planners are Christopher Altemus, Gregory Martin, Richard Nelson, and Carilyn Peters. The IRS Non-Planners are Greg Alexander, Eva Alvarado, Danielle Barto, James Colby Bird, Andre Brooks, Jimmy Cline, Juan Correa, Bill DeSantis, Barrett Dickson, Russell Dotson, Frank Downey, Brian Grove, Jeannine Hammett, Berta Icabalceta, Don Lemons, Meredith Louden, David Martin, Kevin McCord, Bruce McMillan, Michael Medina, Alex Meyers, John Miller, Shari Paige, Ty Patterson, Sue Poshedley, Jane Rigsby, Jarrad Roby, Ken Runkle, Scott Siedlaczek, Will Stanley, John Stansfield, Bennett Strickland, Timothy Tyler, Trent Tyson, Jennifer Velez, Jon Witt, and Joey Wooten. (*See* Doc. 558, at 5 n.1, n.2.)

Tennessee ("the Raid") and detained Latino workers who were on the premises.[2] (Doc. 396, at 36–40.) Plaintiffs' counsel immediately began investigating the Raid and sought to discern which federal agencies, and which individual agents, were involved. This task proved to be difficult, as the officers did not identify themselves on the day of the Raid, nor did they wear nametags or other identifying information. (*Id.* at 37.) By the time Plaintiffs filed their initial complaint in this Court on February 21, 2019, only a fraction of the agents had been identified and could be named as defendants to the action. (*See* Doc. 1.) The possibility of additional defendants was denoted through Plaintiffs' identification of various placeholder "John Doe" agents. (*Id.*)

Plaintiffs' inability to identify agents was not for lack of trying. On May 8, 2018, one month after the Raid, Plaintiffs served a Freedom of Information Act ("FOIA") request on the IRS, requesting:

1. All records related to the worksite operation conducted at Southeastern Provision in Bean Station, Tennessee, on April 5, 2018, including but not limited to:

    a. Enforcement Action Review Form (EARF);

    b. Risk Assessment Guide;

    c. Search Warrant Checklist;

    d. Search Warrant Plan

2. All communications between the IRS and any Tennessee state or local governmental agency or Tennessee state or local law enforcement agency, including but not limited to the Tennessee Highway Patrol, related to the worksite enforcement operation conducted at Southeastern Provision;

---

[2] A fuller description of the facts underlying the claims in this case is available in the Court's prior Order (Doc. 380; *see Zelaya v. Hammer*, 516 F. Supp. 3d 778 (E.D. Tenn. 2021)). While the fourth amended complaint adds the IRS Defendants, it does not substantively change the allegations from those contained in the Third Amended Complaint. Accordingly, the Court incorporates its prior discussion herein.

3. All communications between the IRS and the Department of Homeland Security or its component agencies (including Immigration and Customs Enforcement and Homeland Security Investigations) related to the worksite enforcement operation conducted at Southeastern Provision;

4. All communications between the IRS and individuals associated with Southeastern Provision, including managers, supervisors, employees, and/or agents;

5. Copies of all administrative and/or criminal warrants served on an agent of Southeastern Provision related to the worksite enforcement operation;

6. All FOIA Search Staffing Sheets related to the instant FOIA request.

(Doc. 558-2, at 1–2.) The IRS denied Plaintiffs' request on May 10, 2018, because the information Plaintiffs requested could contain "returns and return information" of third parties. (Doc. 558-3, at 3.) Plaintiffs state they did not believe that the IRS was involved beyond its financial investigation and acquisition of the search warrant. (Doc. 558, at 11; *see* Doc. 396-1.)

On December 7, 2018, Plaintiffs served a separate FOIA request on the Department of Homeland Security ("DHS") requesting the identities of all DHS-affiliated agents involved in the Raid, including agents of ICE and HSI. (Doc. 558-4, at 2.) DHS and ICE did not produce any responsive records. (*Id*.) Consequently, Plaintiffs sued DHS in the District Court for the District of Columbia on March 26, 2019, requesting that it compel DHS to comply with its FOIA duties. (Doc. 558-4.) On January 29, 2019, Plaintiffs submitted their FTCA claims to DHS, and Plaintiffs allege that DHS should have forwarded these claims to the IRS. (Doc. 558, at 9.) However, on May 29, 2019, DHS informed Plaintiffs that it had not forwarded the claims. (*Id*.) As a result, Plaintiffs served their FTCA claims on the IRS on June 20, 2019. (*Id*.)

After filing the initial complaint, Plaintiffs moved for expedited discovery so they could ascertain the identities of additional agents. (Doc. 9.) On April 2, 2019, Magistrate Judge Guyton ordered expedited discovery. (Doc. 44.) Plaintiffs immediately served a subpoena on

DHS to acquire documents that it refused to produce in response to Plaintiffs' FOIA requests. (Doc. 558, at 10.) On April 5, 2019, DHS produced documents indicating that as many as fifty IRS agents were present and involved in the execution of the Raid. (*Id*.)

Plaintiffs then served yet another FOIA request on the IRS, noting that they were not seeking tax information. (Doc. 558-6, at 7.) Yet the IRS once again denied the request, citing, for the second time, potential disclosure of tax information. Plaintiffs' administrative appeal within the IRS was unsuccessful. (*See id*.; Doc. 558-9.) In July 2019, the IRS closed the matter, and Plaintiffs filed a second suit in the District Court for the District of Columbia to force the IRS to respond to the FOIA request. (Doc. 558-5.) Even though the IRS had not yet responded, Plaintiffs moved to amend their complaint in this action to make clear that IRS agents were involved in the Raid on August 13, 2019. (Doc. 315.) Finally, following the service of a *Tuohy*[3] subpoena, Plaintiffs learned the names of the involved IRS agents on February 10, 2020. (Docs. 558-10, 558-1.)

Plaintiffs filed a conditional motion to amend to add the IRS agents on April 9, 2020 (Doc. 369). The Court granted the motion to amend on May 3, 2021, (Doc. 395)[4], and the fourth amended complaint was filed on May 5, 2021 (Doc. 396). Plaintiffs assert two claims against the new IRS Defendants: (1) a claim under 28 U.S.C. § 1985(3) and (2) a claim under 28 U.S.C. § 1986. The newly added IRS agents filed the instant motions to dismiss (Docs. 532, 538) and

---

[3] *See United States ex rel. Tuohy v. Ragen*, 340 U.S. 462 (1951).

[4] In its prior Order, the Court dismissed Plaintiffs' *Bivens* class claims for Fourth and Fifth Amendment violations, their individual *Bivens* Fourth Amendment claim against the DHS Defendants, as well as the class *Bivens* claim against Defendant Worsham. (*See* Doc. 390.)

motion for judgment on the pleadings (Doc. 541) on November 30, 2021. The motions are now ripe for the Court's review.[5]

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). Alternatively, a defendant may file a motion under Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to Rule 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). On a Rule 12(b)(6) or Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal

---

[5] The Court will not consider the IRS Non-Planner Defendants' most recent filing (Doc. 574). As stated in the Court's judicial preferences, absent a motion to file an additional response, "each party is entitled to file . . . only one response." Jud. Preferences. § 5.A.

conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. 12(b)(6) Motions[6]

Both sets of IRS Defendants—the Planners and the Non-Planners—assert that Plaintiffs' claims fail because they are barred by the applicable statute of limitations. (Doc. 533, at 3–4;

---

[6] Defendants seek to have the Court convert their motions into motions for summary judgment because Plaintiffs attached documents to their response. However, "[u]nder a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary-judgment motion if the attached materials are: (i) referred to in the plaintiff's complaint and are central to the claims, or (ii) matters of public record." *Kassem v. Ocwen Loan Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 2017) (internal quotation marks omitted) (citing *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016)). The documents attached to Plaintiffs' response are matters of public record as litigation documents from the District Court for the District of Columbia. The Court may also consider the FOIA letters, as they are letter decisions from governmental agencies and do not add any new material to the Fourth Amended Complaint. *Armengau v. Cline*, 7 F. App'x 336, 343–44 (6th Cir. 2001) ("[C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. . . . [I]f extrinsic materials merely fill in the contours and details of a complaint, they add nothing new and may be considered without converting the motion for one for summary judgment.") Defendants do not dispute the authenticity or accuracy of these records such that it would be inappropriate for the Court to consider them. *Id*. at 433.

Doc. 539, at 9.) Plaintiffs, on the other hand, contend that the doctrine of equitable tolling renders their claims timely. (Doc. 558, at 13–19.) Consequently, the Court must first determine whether Plaintiffs' claims are timely absent the application of equitable tolling.

### i. Timeliness

#### a. Limitations Period and Date of Accrual

Plaintiffs assert claims against both the IRS Planner and the Non-Planner Defendants under 28 U.S.C. §§ 1985(3) and 1986. Congress did not establish a statute of limitations period for § 1985(3),[7] and, as a result, state law governs the applicable statute of limitations. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) ("the settled practice [in federal civil rights actions] has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so"); *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001) ("a claim for relief under § 1985 is governed by the most analogous state statute of limitations in the state in which the cause of action arose"). The Tennessee legislature has enacted a one-year limitations period for "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes." Tenn. Code Ann. § 28-3-104(a)(1)(C) (2017); *Roberson v. Tennessee*, 399 F.3d 792, 794 ("Tennessee provides for a one-year limitations period for civil rights actions"); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012) (similarly finding that § 28-3-104 controls the limitations period for *Bivens* actions). As a state-court suit brought pursuant to the federal civil rights statutes is most similar to this suit, the Court will apply the one-year limitations period contained in Tennessee Code Annotated § 28-3-104 to Plaintiffs' § 1985(3) claim. Plaintiffs do not dispute that a one-year limitations period applies. (*See* Doc. 558, at 16.)

---

[7] 28 U.S.C. § 1986 contains a one-year limitations period.

While state law governs the limitations period, federal law governs when the cause of action accrues. *See Bowden*, 13 F. App'x at 272. Under federal law, a cause of action accrues when "the wrongful act or omission results in damages." *Meeks v. Larsen*, 999 F. Supp. 2d 968, 980 (citing *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). Consequently, the one-year limitations period began to run on April 5, 2018, the day of the Raid, and expired on April 5, 2019. However, Plaintiffs did not add the IRS Defendants until they filed their conditional motion to amend and proposed fourth amended complaint on April 9, 2020, substantially after the expiration of the one-year limitations period. As a result, if Plaintiffs' amended complaint does not relate back, or if the limitations period is not tolled, their claims are time-barred and the IRS Defendants must be dismissed.

  b.  Relation Back

Both the IRS Planner and Non-Planner Defendants argue that the fourth amended complaint does not relate back under Federal Rule of Civil Procedure 15. (Doc. 534, at 4–8; Doc. 539, at 10–15.) Rule 15(c) provides that an amendment to a pleading relates back to the initial filing date if it (1) arises out of the same conduct that forms the basis of the initial complaint and (2) merely changes the party against whom the claims are asserted, (3) so long as the party brought in by amendment had notice of the action and knew or should have know that, but for a mistake concerning the proper party's identity, the suit would have been initially brought against it. Fed. R. Civ. P. 15(c). Rule 15 does not require that the defendants to be brought in by amendment had actual notice; constructive notice of the suit suffices. *See Berndt v. Tennessee*, 796 F.2d 879, 883–84 (6th Cir. 1986).

When conducting the mistake inquiry, courts begin with the prospective defendant's knowledge of the plaintiff's mistake. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548

(2010). "Information in the plaintiff's possession is only relevant if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id*. The Sixth Circuit has squarely held that ignorance of a party's identity, or lack of knowledge, does not constitute a "mistake" within the meaning of Rule 15(c). *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 502 (6th Cir. 2019) (collecting cases). Rather, a "mistake" is "[a]n error, misconception, or misunderstanding; an erroneous belief" on the part of the plaintiff—and one of which the prospective defendant was aware within the limitations period. *Krupski*, 560 U.S. at 548.

"Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the mistaken identity requirement" of Rule 15. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citations and internal quotation marks omitted). Substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution, such that the requirements of Federal Rule of Civil Procedure 15(c) "must be met" for the amended complaint to relate back. *Cox*, 75 F.3d at 240; *see also Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548 (6th Cir. 2016) ("The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party"); *Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 433 (6th Cir. 2013); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (Rule 15 "allows relation back for the mistaken identification of defendants, not for defendants to be named later through "Joe Doe," "Unknown Defendants" or other missing appellations.").

In the fourth amended complaint, Plaintiffs added named IRS agents and removed various "John Doe" agents. Under Sixth Circuit caselaw, therefore, Plaintiffs' addition of these named defendants is considered an addition of new parties. *See Asher v. Unarco Material*

9

*Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("The precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.") (citation omitted). However, the fourth amended complaint does not relate back because Plaintiffs did not make a "mistake" in the meaning of Rule 15(c)(1)(C). Rather, they were simply unaware of the IRS agents' involvement and their identities. *Rayfield*, 768 F. App'x at 502; *see also Kelter v. WASP, Inc.*, 5 F. Supp. 3d 856, 864 (E.D. Ky. 2014) ("Rule 15(c) provides no protection for one who fails to discover the identity of later-named defendants during the limitations period." (citation omitted)). As a result, the fourth amended complaint does not relate back to the filing date of the first complaint. Consequently, if the statute of limitations is not tolled, Plaintiffs' addition of the IRS Defendants is untimely.

## ii. *Equitable Tolling*

The fourth amended complaint, however, may still be considered timely under a tolling doctrine. Tolling of the § 1985(3) claim is governed by state law. *Wallace v. Kato*, 549 U.S. 384, 394 (2007). Tolling of the § 1986 claim, however, is a matter of federal law. *See Betts v. Cent. Ohio Gaming Ventures*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019). Relation back and equitable tolling are distinct principles of law and should be evaluated separately. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007) [hereinafter *Bledsoe II*] (the Court "must determine whether the otherwise time-barred allegations are saved by equitable tolling").

### a. State Law

Plaintiffs contend that "[s]tate law fraudulent concealment tolling provides the basis for tolling on the § 1985(3) claim and, to the extent it does not, these state law principles would be

inconsistent with federal equitable tolling, which independently requires tolling." (Doc. 558, at 17.) Tennessee does not recognize the doctrine of "equitable tolling"; however, Tennessee courts have "recognized and applied the doctrines of equitable estoppel and fraudulent concealment to toll the running of the statute of limitations." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Tolling for fraudulent concealment applies in "circumstances in which the defendant purposefully engaged in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury of the plaintiff." *Id*. at 462. To establish tolling for fraudulent concealment, a plaintiff must show:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and, (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id*. at 462–63; *see also Pike v. United States*, 868 F. Supp. 2d 667, 682–83 (M.D. Tenn. 2012) (finding that fraudulent-concealment tolling applied because plaintiff "exercised reasonable care and diligence," and "initiated a concerted effort to ascertain the identities of the Deputized Officers from local, state, and federal authorities," but was nonetheless unable to discover the identities of the officers during the limitations period due to various agency's "delaying tactics . . . , misrepresentations . . . , and/or strategic omissions.").

In this case, the Tennessee doctrine of fraudulent concealment applies. The IRS failed to respond to Plaintiffs' repeated FOIA requests, even after Plaintiffs clarified that they were not seeking tax information. And Plaintiffs were diligent, even going so far as to pursue litigation against the IRS to enforce compliance with the requests. The IRS knew that Plaintiffs claimed they had been injured in the Raid; indeed, it received actual notice of Plaintiffs' FTCA claims in

June 2019. (Doc. 558, at 9.) Nevertheless, it took repeated steps to prevent Plaintiffs from uncovering the identities of IRS agents involved in the Raid's execution.

Additionally, the other defendants in this action likely knew that IRS agents were involved and did not correct Plaintiffs' or Magistrate Judge Guyton's assumption to the contrary at the April 2019 hearing. For example, in granting Plaintiffs' motion for expedited discovery and to issue a subpoena to DHS, Magistrate Judge Guyton noted:

> In April 2019, officers from *[ICE, HSI, ERO, and THP]* executed a search warrant at the Southeastern Provision meatpacking plant ("Plant") in Tennessee. Plaintiffs allege that during the execution of the search warrant, Defendants violated their constitutional rights.
>
> . . .
>
> The instant dispute relates to Plaintiffs' efforts to identify the Defendants named as John and Jane Does ("Doe Defendants") in the Complaint.
>
> . . . .
>
> Plaintiffs explain that the *Doe Defendants are officers with ICE, HSI, and ERO.*
>
> . . .
>
> At the hearing, Plaintiffs explained that the discovery they seek is crucial because the statute of limitations expires on Friday, April 5, 2019. Plaintiffs stated that they have made diligent efforts to ascertain the Doe Defendants' identities to no avail.
>
> . . .
>
> The Court finds that the Plaintiffs have established good cause to seek expedited discovery given their difficulties with identifying the Doe Defendants and Plaintiffs' need in naming the proper parties in this lawsuit.

(Doc. 44, at 1–7 (emphasis added).) Neither Plaintiffs nor Magistrate Judge Guyton mentioned IRS agents as potential "John Does" who needed to be identified prior to the running of the state of limitations.

Accordingly, Plaintiffs did not discover that IRS agents were involved in executing the Raid until April 5, 2019, and immediately submitted an additional FOIA request to the IRS seeking the identities of the agents. This request, like the others, was denied. Finally, Plaintiffs served a *Tuohy* subpoena on the IRS—to which the IRS initially objected—and succeeded in discovering the identities of the IRS agents on February 10, 2021. Consequently, the Court finds that the statute of limitations began to run on February 10, 2021.[8] *See Pike*, 868 F. Supp 2d at 682. The Court will therefore treat the Fourth Amended Complaint as timely filed and allow the § 1985(3) claim against the IRS Defendants to proceed.

      b.      Federal Law

Additionally, Plaintiffs argue that, if fraudulent concealment does not apply, "these state law principles would be inconsistent with federal equitable tolling." (Doc. 558, at 17). The Court agrees: even if the Court did not apply the doctrine of fraudulent concealment, the limitations period for the § 1985(3) claim would still be tolled under federal law. *See Pike*, 868 F. Supp. 2d at 683–84 ("even if Tennessee law did not permit tolling of the statute of limitations [], the court would find that Tennessee law conflicts with federal law"). In the Sixth Circuit, courts analyze the following factors in determining whether to apply the federal common-law doctrine of equitable tolling:

> (1) lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice to the defendant, and (5) the plaintiff's reasonableness i[n] remaining ignorant of the particular legal requirement.

---

[8] It is unimportant that the IRS engaged in the concealment rather than the individual agents. *See Pike*, 868 F. Supp. 2d at 683 ("It would be nonsensical and patently unjust to find that claims against the Deputized Officers . . . were not tolled, simply because it was their employer/deputizing authority that engaged in concealment.").

*Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). These factors are not exhaustive, and tolling is a fact-intensive inquiry. *Bledsoe II*, 501 F.3d at 519. Equitable tolling should be used sparingly; the doctrine does "not extend to what is at best a garden-variety claim of excusable neglect." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

The doctrine's application is appropriate "when the plaintiff knows he was injured yet was unable to learn the wrongdoer's identity, despite all reasonable diligence." *Friedmann v. Campbell*, 202 F.3d 268, 1999 WL 1045281, at *2 (6th Cir. Nov. 8, 1999) (unpublished table decision) (remanding for a determination of whether equitable tolling applies); *see Vana v. Mallinckrodt Med., Inc.*, 770 F.3d 116, 1995 WL 675597, at *1 (6th Cir. Nov. 8, 1995) (unpublished table decision) (noting that a "defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time" (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)); *see also In re McKenzie*, Nos. 1:11-cv-192, 1:11-cv-274, 1:12-cv-025, 2012 WL 4742708, at *11 (E.D. Tenn. Oct. 2, 2012) (affirming bankruptcy court's decision to equitably toll the statute of limitations where party had "made affirmative misrepresentations"); *Farmer v. Home Depot USA, Inc.*, No. A-10-CA-591-SS, 2011 WL 13324391, at *4 (W.D. Texas May 16, 2011) (tolling the statute of limitations because "it is not in the interest of justice to allow a defendant to obscure the identities of other possible defendants, either deliberately or inadvertently, when a plaintiff would have no independent knowledge of those defendants"); *Budget Charters, Inc. v. Pitts*, No. 3:17-cv-722, 2017 WL 5444743, at *7 (M.D. Tenn. Nov. 14, 2017) (applying equitable tolling when plaintiffs' "limited understanding appear[ed] to be occasioned, at least in part, by the defendants' and other officials' own languid pace at revealing all of the details surrounding" the

incident at issue); *Olmstead v. Fentress Cnty.*, No. 2:16-cv-0046, 2017 WL 4176256, at *3 (M.D. Tenn. Sept. 21, 2017) (magistrate judge decision) (applying equitable tolling when court did not address plaintiff's motion to amend until after the limitations period had expired, yet plaintiff had diligently pursued his rights "during the delay").

Defendants contend that equitable tolling should not apply to either claim, because Plaintiffs did not request the names of involved IRS agents in their initial FOIA request on May 8, 2019, allegedly belying their lack of diligence. (Doc. 561, at 92; Doc. 562, at 3.) However, Plaintiffs' explanation for failing to initially request the specific names is compelling. They assumed the IRS had conducted the financial investigation but had not detained individuals during the Raid alongside DHS, ICE, CBP, HSI, and ERO agents. The search warrant itself said nothing about detaining any workers or that the IRS would also be involved in detaining such workers. (Doc. 396-1.) Consequently, while Plaintiffs likely knew of the filing requirement in the abstract—evidenced by the fact that they sued the rest of the Defendants well within the limitations period—they did not realize that the IRS Defendants' involvement necessitated their addition to the case.

Furthermore, without the government's cooperation, Plaintiffs could not discover the identity of the IRS agents, and the government was not forthcoming with information regarding the identities of the defendants. Nonetheless, Plaintiffs were diligent in pursuing their rights: they served two FOIA requests on the IRS, moved for expedited discovery in this action, and sued the IRS to enforce compliance with the FOIA request. Additionally, if the IRS had responded to the initial FOIA request, Plaintiffs would have likely obtained information indicating that IRS agents were involved in the execution of the Raid, and they could have requested the agents' identities much earlier. Accordingly, the Court finds it appropriate to toll

15
Case 3:19-cv-00062-TRM-CHS   Document 575   Filed 01/26/22   Page 15 of 20   PageID #: 6556

the statute of limitations under federal law for both the § 1985(3) and § 1986 claims until February 10, 2021.

B. Non-Planners' 12(c) Motion[9]

The IRS Non-Planner Defendants assert that Plaintiffs' §§ 1985(3) and 1986 claims must be dismissed because Defendants "had no knowledge, involvement, or oversight concerning the planning of the Operation" and "were not aware or involved in a conspiracy, within the IRS or otherwise, to deprive Plaintiffs of any constitutional rights." (Doc. 542, at 2.)

42 U.S.C. § 1985(3) "creates a cause of action for a conspiracy between two or more persons to deprive another of the equal protection of the laws." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). The Supreme Court has articulated four elements required to establish a cause of action under § 1985(3):

> To come within [§ 1985(3)] a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of (the) conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *see also Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 993 (6th Cir. 1994) (applying the *Griffin* elements). A § 1985(3) plaintiff must "prove that the conspiracy was motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus,'" though the class "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender."

---

[9] Plaintiffs have not reasserted counts one, two, and six against any of the IRS Defendants, as the Court previously dismissed them. (*See* Doc. 380; Doc. 389, at 11–12; Doc. 557, at 7–8.) Plaintiffs amended these claims in the fourth amended complaint to preserve them for appeal. (*See* Doc. 557, at 7–8.) Consequently, the IRS Non-Planner Defendants' motion is moot as to these claims.

*Haverstick Enters.*, 32 F.3d at 994 (quoting *United Brotherhood of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 829 (1983)).

The Non-Planner IRS Defendants assert that Plaintiffs have not adequately alleged a § 1985(3) claim against them and, furthermore, that they are entitled to qualified immunity. (Doc. 542, at 17–21.) Both contentions fail. First, Plaintiffs adequately allege a § 1985(3) claim against the IRS Non-Planner Defendants. The IRS Non-Planner Defendants assert that, because they were not involved "in any planning of the Operation and had no discretion in planning, executing, overseeing, or preventing same," they cannot be held liable under § 1985(3). (*Id.* at 18.) However, co-conspirators need not expressly agree to be part of a conspiracy. *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). They do not have to know "all the details of the illegal plan or all of the participants involved" to be held liable. *Id*. And Plaintiffs have alleged sufficient facts regarding the IRS Non-Planner Defendants' participation in the conspiracy to survive the instant motion. For example, Plaintiffs specifically identify each IRS Non-Planner Agent's role in the Raid. (*See* Doc. 396, at 15–23.) Plaintiffs state that "[a] large group pre-operation briefing also took place . . . and included nearly all of the DHS and IRS agent Defendants, along with THP Troopers who participated in the raid the next day." (*Id*. at 35.) This briefing included presentations from DHS and IRS Planners. (*Id*.) The IRS Non-Planner Defendants admit that they participated in this meeting and that they executed specific roles during the Raid. (Doc. 537, at 4–9, 18.) Finally, Plaintiffs allege that at least two of the IRS Non-Planner Defendants were involved in detaining and abusing Latino workers alongside ICE Defendant Witsell. (Doc. 396, at 44.) Indeed, as the Court previously stated:

> [T]he complaint is shot through with allegations that the agents planning the raid—which included THP officers, who participated in the raid by blocking the road, surrounding the Plant, and pointing machine guns at Plaintiffs—intentionally used the search warrant as a pretext to target Latino workers for

illegal arrests, claims bolstered by related allegations that agents detained only Latinos, pointed firearms only at Latinos, handcuffed only Latinos, transported only Latinos to the Armory, hurled racial slurs only at Latinos, physically harmed only Latinos, humiliated only Latinos, and all the while allowed white individuals who also worked at the Plant to stand by unmolested, despite that white individuals were the ostensible targets of the IRS investigation. (*See generally* Doc. 315 [Third Amended Complaint][10].)

Defendants also argue that even if the raid *resulted* in race-based constitutional violations, it was not *planned* to do so, but at this stage, that is necessarily an inferential conclusion—and the Court must draw reasonable inferences from the facts alleged in favor of Plaintiffs. Indeed, it is far more reasonable to infer from the facts alleged that the raid was planned to be executed in the way described, as opposed to dozens of officers coincidentally executing it in the same manner.

And while Defendants argue that their targeting of Latinos was permissible based upon the knowledge contained in Worsham's affidavit, the alleged method of execution is sufficient to plausibly show that the raid "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Bey v. Falk*, 946 F.3d 304, 319 (6th Cir. 2019) (internal quotation marks omitted) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005)). In sum, Plaintiffs have stated a claim under 42 U.S.C. § 1985(3), meaning dismissal on the pleadings would be improper.

*Zelaya*, 516 F. Supp. 3d at 806. Accordingly, the Court again finds that Plaintiffs adequately allege a § 1985(3) claim. The IRS Non-Planner Defendants, like the Defendants who raised these arguments before them, are not entitled to judgment on the pleadings.

Nor are these Defendants uniquely entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The doctrine is designed to preclude liability unless "it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation [they] confronted.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (citations omitted). Qualified immunity seeks

---

[10] As previously stated, the allegations in the fourth amended complaint do not substantially differ from those contained in the third amended complaint.

to strike "a proper balance" between the vindication of rights through damages suits and the prevention of undue liability for reasonable, if ultimately mistaken, judgments. *Id.* at 1866.

The IRS Non-Planner Agent Defendants state that the intracorporate-conspiracy doctrine establishes that they are entitled to qualified immunity. (Doc. 542, at 19.) Specifically, they argue that it was not clearly established that their actions in connection with the Raid were not shielded by the intracorporate-conspiracy doctrine. (*Id.*) The Supreme Court has held that that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Abbasi*, 137 S. Ct. at 1867. Defendants argue that the "law is unsettled as to the level of departmental separation that can exist without forming a conspiracy." (Doc. 542, at 19); *see, e.g.*, *K.O. v. U.S. Immigr. & Customs Enf't*, 468 F. Supp. 3d 350, 370 (D.D.C. 2020) (holding that whether the intracorporate-conspiracy doctrine "applies to conversations and planning . . . across executive departments" is "sufficiently open that the issue is not 'beyond debate'" for purposes of qualified immunity (citation omitted)).

In its previous Order, the Court painstakingly considered this same argument and decided that qualified immunity did not apply due to the participation of state agents. *See Zelaya*, 516 F. Supp. 3d at 802–06. Nothing about the IRS Non-Planner Defendants changes the Court's analysis here, because the IRS Non-Planner Defendants communicated with state agencies that could not be reasonably considered federal "executive agencies." The IRS Non-Planner Defendants state they "had no communications whatsoever with the Tennessee Highway Patrol, Morristown Police Department, or any other federal agency *prior to the Pre-Operational Briefing*." (Doc. 542, at 19 (emphasis added).) The IRS Non-Planner Defendants admit that they were at the pre-Raid briefing, where agents of the Tennessee Highway Patrol and DHS both spoke and coordinated the Raid. (Doc. 537, at 18.) Accordingly, Plaintiffs have adequately

19
Case 3:19-cv-00062-TRM-CHS   Document 575   Filed 01/26/22   Page 19 of 20   PageID #: 6560

alleged that the IRS Non-Planner Defendants were involved in coordinating not just with other federal agents, but with state agents and agencies, as well. Accordingly, the intracorporate-conspiracy doctrine cannot shield them. Because "[n]o reasonable officer could believe that Tennessee Highway Patrol officers—who are employed by a Tennessee state agency—are part of the same legal entity as federal IRS and DHS officers," the IRS Non-Planner Defendants are not entitled to qualified immunity. *Zelaya*, 516 F. Supp. 3d at 805. As a result, Plaintiffs' § 1985(3) claim may proceed against the IRS Non-Planner Defendants.

Finally, these Defendants assert that they are entitled to judgment on Plaintiffs' § 1986 claim. 42 U.S.C. § 1986 "establishes a cause of action against anyone 'having knowledge that any of the wrongs conspired to be done [as described in § 1985]' and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so.'" *Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 650 (6th Cir. 2011) (quoting 42 U.S.C. § 1986). "Dismissal of a § 1986 claim is proper if a plaintiff fails to state a cause of action under § 1985." *Id.* Defendants move to dismiss Plaintiffs' § 1986 claim only on the basis that their § 1985(3) claim should also be dismissed. Having concluded that Plaintiffs' § 1985(3) claim should not be dismissed, the Court has no basis to dismiss their § 1986 claim.

## IV. CONCLUSION

For the above reasons, the IRS Planner Defendants' motion (Doc. 532) and the IRS Non-Planner Defendants' motions (Doc. 537, 541) are hereby **DENIED**.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**