# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | |
|---|---|
| **ISABEL ZELAYA, et al.,** | |
| *Plaintiffs*, | No. 3:19-cv-00062-TRM-CHS |
| **v.** | **CLASS ACTION** |
| **ROBERT HAMMER, et al.,** | **JURY DEMANDED** |
| *Defendants*. | |

## JOINT STIPULATION AND
## SETTLEMENT AGREEMENT AND RELEASE

This Joint Stipulation and Settlement Agreement and Release ("Settlement," "Agreement," or "Settlement Agreement") is made and entered into by Plaintiffs CATARINO ZAPOTE HERNÁNDEZ ("Zapote Hernández"), individually and as representative of the Class, as defined below; MARIA DEL PILAR GONZÁLEZ CRUZ ("González Cruz"), individually and as representative of the Class; ISABEL ZELAYA ("Zelaya"), individually; GERONIMO GUERRERO ("Guerrero"), individually; CAROLINA ROMULO MENDOZA ("Mendoza"), individually; and MARTHA PULIDO ("Pulido"), individually; and by Defendants NICHOLAS R. WORSHAM ("Worsham"), RONALD J. APPEL, JR. ("Appel"), and the UNITED STATES OF AMERICA.

1

The class-related portions of this Agreement are subject to Court approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1711 *et seq.* This Agreement is made for the sole purpose of consummating the full and final settlement of this Action, as defined below. If the Court does not enter a Final Approval Order, as defined below, or the conditions precedent are not met, this Agreement is void and of no force or effect whatsoever.

NOW THEREFORE, in consideration of the promises and warranties set forth below, and intending to be legally bound and acknowledging the sufficiency of the consideration set forth below, the Parties agree that the Action shall be, and is finally and fully, compromised and settled on the following terms and conditions:

1.    FACTUAL AND PROCEDURAL BACKGROUND OF ACTION

1.1.    On February 21, 2019, Plaintiffs and Luis Bautista Martínez ("Bautista Martínez") filed a putative class action complaint (the "Complaint") in the United States District Court for the Eastern District of Tennessee, Knoxville Division (the "Court"), entitled:  *Isabel Zelaya, et al. v. Jere Miles, et al.* (and presently entitled *Isabela Zelaya, et al. v. Robert Hammer, et al.*), Case No. 3:19-cv-00062 (the "Action").

1.2.    On April 4, 2019, Plaintiffs and Bautista Martínez filed a First Amended Complaint.

1.3.    Plaintiffs and Bautista Martínez filed a Second Amended Complaint, which the Court by Order on April 24, 2019 deemed filed as of April 5, 2019.

1.4.    On August 13, 2019, Plaintiffs and Bautista Martínez filed a Third Amended Complaint ("TAC").

1.5.    The TAC alleged the following causes of action:  (1) Equal Protection Deprivation in Violation of Fifth Amendment on behalf of Class against Individual Defendants ("First Cause of

2

Action"); (2) Unreasonable Seizures and/or Arrests in Violation of Fourth Amendment on behalf of Class against Individual Defendants ("Second Cause of Action"); (3) Unreasonable Seizures and/or Arrests in Violation of the Fourth Amendment on behalf of Class against Individual Defendant Nicholas Worsham ("Third Cause of Action"); (4) 42 U.S.C. § 1985 Conspiracy to Violate Civil Rights on behalf of Class against Individual Defendants ("Fourth Cause of Action"); (5) 42 U.S.C. § 1986 Failure to Prevent Violation of Civil Rights on behalf of Class against Individual Defendants ("Fifth Cause of Action"); (6) Unreasonable Seizures and/or Arrests in Violation of the Fourth Amendment on behalf of Zelaya, Guerrero, Romulo Mendoza, Bautista Martínez, and Pulido against DHS Defendants, as defined below ("Sixth Cause of Action"); (7) Excessive Force in Violation of Fourth Amendment on behalf of Guerrero against Assaulting Officer Defendant ("Seventh Cause of Action"); (8) Excessive Force in Violation of Fourth Amendment on behalf of Bautista Martínez against Gun to the Head Officer Defendant ("Eighth Cause of Action"); (9) Federal Tort Claims Act – False Imprisonment and False Arrest on behalf of Zelaya, Guerrero, Romulo Mendoza, Bautista Martínez, Zapote Hernández, González Cruz, and Pulido against United States of America ("Ninth Cause of Action"); (10) Federal Tort Claims Act – Battery on behalf of Guerrero and Bautista Martínez against United States of America ("Tenth Cause of Action"); (11) Federal Tort Claims Act – Assault on behalf of Guerrero and Bautista Martinez against United States of America ("Eleventh Cause of Action"); (12) Federal Tort Claims Act – Intentional Infliction of Emotional Distress on behalf of Guerrero and Bautista Martínez against United States of America ("Twelfth Cause of Action"); (13) Federal Tort Claims Act – Negligent Infliction of Emotional Distress on behalf of

3

Plaintiffs Guerrero and Bautista Martínez against United States of America ("Thirteenth Cause of Action").

1.6. On January 31, 2021, the Court issued a Memorandum Opinion granting Individual Defendants' Motion to Dismiss the First, Second, Third, and Sixth Causes of Action alleged in the TAC with prejudice and denying Defendants' Motion to Dismiss the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Causes of Action.

1.7. On May 3, 2021, the Court granted Plaintiffs' motion for leave to file the Fourth Amended Complaint ("FAC").

1.8. On May 5, 2021, Plaintiffs and Bautista Martínez filed the Fourth Amended Complaint ("FAC"), adding 41 IRS agents as Defendants.

1.9. The FAC reasserted the Thirteen Causes of Action from the TAC, including reasserting the dismissed First, Second, Third, and Sixth Causes of Action for the purpose of preserving rights to appeal. The FAC also named additional IRS Defendants and named John Witsell instead of "Assaulting Officer Defendant" with respect to the Seventh Cause of Action.

1.10. On November 30, 2021, IRS Defendants filed Motions to Dismiss the FAC. The Court denied those Motions on January 26, 2022.

1.11. On February 2, 2022, the Court issued an Order granting a Joint Motion to Dismiss Bautista Martínez's individual claims with prejudice. Because Bautista Martínez alone asserted the Eighth Cause of Action, that Cause of Action was dismissed with prejudice.

1.12. All Defendants filed responsive pleadings denying that Defendants had any liability for the claims asserted in the Action and seeking dismissal of the FAC.

4

1.13.    On August 9, 2022, the Court issued a Memorandum Opinion granting Plaintiffs' Motion for Class Certification of their Class Claims.

1.14.    The Parties have engaged in extensive party and non-party discovery, including, *inter alia*, exchanging tens of thousands of pages of documents and all available video footage of the events in question, and conducting more than 50 depositions.

1.15.    On August 22, 2022, the Parties participated in a private mediation before Mediator Carlos González.  With the mediator's assistance, the Parties agreed to the terms of the Settlement. The Parties further agreed to enter into this Agreement to memorialize the Settlement, subject to the Court's approval of the Class Settlement.

1.16.    The Parties believe this Settlement is fair, adequate, and reasonable and have arrived at this Settlement after lengthy, extensive, arms-length negotiations, facilitated by an experienced class action mediator, considering all relevant factors, present and potential.  Nothing in this Settlement Agreement shall be construed or deemed as an admission of liability, culpability, or wrongdoing on the part of the Defendants or the Released Parties.  This Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in drafting this Settlement Agreement.

2.    <u>DEFINITIONS</u>

As used herein, the following terms shall have the meanings specified below. To the extent terms or phrases used in this Agreement are not defined below but are defined elsewhere in this Agreement, they are incorporated by reference into this definition Paragraph.

5

2.1.     "Administrative Expenses" include all costs and expenses associated with and paid to the Settlement Administrator to administer the Class Settlement and related matters and all other associated costs, which Class Counsel shall pay directly.

2.2.     "Agreement," "Settlement," and "Settlement Agreement" mean this Joint Stipulation and Settlement Agreement and Release, including all attached exhibits.

2.3.     "CAFA" means the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.*

2.4.     "Claims" means all claims alleged or that could have been alleged in the Action by Plaintiffs, on behalf of any Plaintiff(s) individually, and/or by or on behalf of the Class Members, based on the facts, allegations, transactions, acts, omissions, or occurrences alleged in the FAC, including, but not limited to, the First through Thirteenth Causes of Action of the FAC.

2.5.     "Claim Form" means the Claim Form, set forth in Exhibit B, or as the Court otherwise approves, to be mailed to Class Members.

2.6.     "Class" and "Class Members" mean all Latino individuals working in the Southeastern Provision meatpacking plant (the "Plant") in Bean Station, Tennessee on April 5, 2018 who were detained, as the Court certified in this action.

2.7.     "Class Counsel" or "Plaintiffs' Counsel" means the Southern Poverty Law Center; the National Immigration Law Center; Eben P. Colby, Jeremy Berman, and Arthur Bookout; Sherrard Roe Voigt & Harbison, PLC; and Phillip F. Cramer of Sperling & Slater, P.C.

2.8.     "Class Notice" means the Notice of Class Action Settlement, set forth in the form of Exhibit A, or as the Court otherwise approves, which the Settlement Administrator will mail to Class Members.

2.9.     "Class Representatives" means Plaintiffs Zapote Hernández and González Cruz.

6

2.10.    "Class Settlement" means the portion of the Settlement which is subject to the Court's preliminary and final approval, as distinct from Plaintiffs' Individual Settlements.

2.11.    "Class Settlement Amount" means the agreed-upon settlement amount $550,000.00 to be paid on behalf of all Individual Defendants by Defendants Worsham and Appel in full and final settlement of the Released Claims.

2.12.    "Counsel for Defendant Witsell" means Mary Ann Stackhouse, Lynn C. Peterson, and T. Mitchell Panter of Lewis, Thomason, P.C.

2.13.    "Counsel for DHS Non-Planner Defendants" means Jimmie C. Miller, Joseph B. Harvey, and Stephen M. Darden of Hunter Smith & Davis, LLP.

2.14.    "Counsel for DHS Planner Defendants" means J. Ford Little, J. Chadwick Hatmaker, Kaitlyn E. Hutcherson, and David Cantrell of Woolf, McClane, Bright, Allen & Carpenter, PLLC.

2.15.    "Counsel for IRS Non-Planner Defendants" means Charles K. Grant, Clarence Risin, Thomas J. Aumann, Daphne Bugelli, Chelsea N. Hayes, and Savannah D. McCabe of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

2.16.    "Counsel for IRS Planner Defendants" means Donald J. Aho, Zachary H. Greene, Bradford G. Harvey, and Alexander C. Vey of Miller & Martin PLLC.

2.17.    "Counsel for the United States of America" means Laura Day Taylor, Krista Consiglio Frith, and Kari Munro of the United States Attorney's Office for the Western District of Virginia.

7

2.18.    "Days" or "days" means calendar day(s) unless otherwise stated.  If any designated date or deadline falls on a weekend or holiday, the designated date or deadline will occur on the next business day.

2.19.    "Defendant Witsell" means John Witsell.

2.20.    "Defendants" means the Individual Defendants and the United States of America.

2.21.    "Defense Counsel" means Counsel for Defendant Witsell, Counsel for DHS Non-Planner Defendants, Counsel for DHS Planner Defendants, Counsel for IRS Non-Planner Defendants, Counsel for IRS Planner Defendants, and Counsel for the United States of America.

2.22.    "DHS" means the United States Department of Homeland Security and its sub-agencies, including, but not limited to, Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE").

2.23.    "DHS Defendants" means DHS Non-Planner Defendants, DHS Planner Defendants, and Defendant Witsell.

2.24.    "DHS Non-Planner Defendants" means Francisco J. Ayala, Jeff Bednar, Glen E. Blache, Deni Bukvic, Christopher R. Cannon, Clint A. Cantrell, Kashif Chowhan, Paul Criswell, Blake Diamond, Wayne C. Dickey, Brenda Dickson, Michelle Evans, Theodore Francisco, Mathew Tyler Grooms, Keith A. Hale, John L. Heishman, Jonathan Hendrix, Waylon R. Hinkle, Shannon N. Hope, Ryan Hubbard, Jeffrey P. Klinko, Steven C. Ledgerwood, James K. Liles, David G. Lodge, Troy R. McCarter, Joshua D. McCready, Anthony J. Martin, Jason E. Miller, Matthew Moon, George David Nalley, Aunrae A. Navarre, Tommy C. Pannell, Jerrol Scott Partin, David V. Pena, Michael Perez, Billy G. Riggins, Jeffrey A. Schroder, Bobby R. Smith, Ricky D. Smith, Connie Stephens, Ricky Thornburgh, Robert Whited, and Austin J. Williams.

8

2.25. "DHS Planner Defendants" means Ronald J. Appel, Jr., Travis E. Carrier, Trevor W. Christensen, Dennis M. Fetting, Robert Hammer, and Trey Lund.

2.26. "Effective Date" of this Agreement means the date when all the conditions set forth in Paragraph 8.6 have occurred.

2.27. "Final Approval Hearing" means the hearing to be held by the Court to determine whether it will enter a Final Approval Order approving the Class Settlement and enter a judgment dismissing the Action consistent with this Agreement.

2.28. "Final Approval Order" means the Court's entry of a final order approving and granting final approval of the Class Settlement.

2.29. "Individual Class Member Settlement Payment" means the amount ultimately distributed to each Settlement Class Member from the Class Settlement Amount.

2.30. "Individual Defendants" means the DHS Defendants and the IRS Defendants.

2.31. "IRS" means the Internal Revenue Service, an agency of the United States Department of the Treasury.

2.32. "IRS Defendants" means the IRS Non-Planner Defendants and the IRS Planner Defendants.

2.33. "IRS Non-Planner Defendants" means Greg Alexander; Eva Alvarado; Danielle Barto; James Colby Bird; Andre Brooks; Jimmy Cline; Juan Correa; Bill DeSantis; Barrett Dickson; Russell Dotson; Frank Downey; Brian Grove; Jeannine Hammett; Berta Icabalceta; Don Lemons; Meredith Louden; David Martin; Kevin McCord; Bruce McMillan; Michael Medina; Alex Meyer; John Miller; Shari Paige; Ty Patterson; Sue Poshedley; Jane Rigsby; Jarrad Roby; Ken Runkle; Scott

9

Siedlaczek; Will Stanley; John Stansfield; Bennett Strickland; Timothy Tyler; Trent Tyson; Jennifer Velez; Jon Witt; and Joey Wooten.

2.34. "IRS Planner Defendants" means Nicholas Worsham, Richard Nelson, Carilyn Peters, Greg Martin, and Christopher Altemus.

2.36. "Mailing Date" means the date the Settlement Administrator initially mails by Regular United States Mail the Notice Packets to the Class Members.

2.38. "Notice of Objection" means a written request to object to the Class Settlement that a Class Member completes and files in the manner this Agreement and the Class Notices set forth.

2.39. "Notice Packet" means the Class Notice and the Claim Form.

2.40. "Notice Period" means the 90-calendar day period that begins on the Mailing Date. A Class Member must return an Opt-Out Request to the Settlement Administrator with a postmark dated during the Notice Period to be excluded as a Settlement Class Member. A Class Member must submit a Notice of Objection to the Court during the Notice Period to be considered. A Class Member must return a complete and valid Claim Form to the Settlement Administrator with a postmark dated or email or fax received during the Notice Period to receive an Individual Class Member Settlement Payment.

2.41. "Opt-Out Request" means a written request from a Class Member requesting exclusion from the Class in accordance with the terms of the Agreement and the Class Notices.

2.42. "Parties" means Defendants and Plaintiffs, including Class Representatives, individually and on behalf of all Class Members.

2.43. "Plaintiffs" means Isabel Zelaya, Geronimo Guerrero, Carolina Romulo Mendoza, Martha Pulido, Catarino Zapote Hernández, and Maria del Pilar González Cruz.

10

2.44. "Plaintiffs' Counsel's Fees and Expenses" means the monies, not to exceed $150,000.00 the Parties agreed for the United States of America to pay to Plaintiffs' Counsel to partially reimburse them for their fees, costs, and expenses in prosecuting this Action.

2.45. "Plaintiffs' Individual Settlements" means $475,000.00, along with the immigration-related terms, to be allocated and provided as set forth in Paragraphs 3.1 and 3.2 of this Agreement.

2.46. "Preliminary Approval Order" means an order from the Court preliminarily approving the Class Settlement.

2.47. "Qualified Class Members" means all Settlement Class Members who file and submit timely valid Claim Forms to the Settlement Administrator pursuant to Paragraph 7.4 of this Agreement.

2.48. "Released Claims" or "Settled Claims" mean all disputes, claims, and/or causes of action that are released as set forth in Paragraph 5.3 of this Agreement.

2.49. "Released Parties" shall mean Defendants, together with any of their past, present, or future administrators, officers, officials, agents, employees, heirs, representatives, attorneys, insurers, or assignees.

2.50. "Settlement Administrator" means an experienced, neutral third-party administrator that the Parties and the Court approve to be responsible for administering the Class Settlement and related matters. The Parties propose the appointment of Settlement Services, Inc., whom Class Counsel believe to be a qualified administrator, to serve as the Settlement Administrator. Class Counsel will retain and compensate the Settlement Administrator.

11

2.51. "Settlement Class" and "Settlement Class Members" mean all Class Members other than those who timely and validly opted out of the Class pursuant to Paragraph 7.6 of this Agreement. A "Settlement Class Member" is any individual who has not timely and validly opted out and therefore is a member of the Settlement Class.

2.52. "Settlement Proceeds Distribution Deadline" means a date that is 40 calendar days after the Effective Date.

2.53. "Settlement Term Sheet" means the written terms and conditions regarding the Settlement to which the Parties agreed on August 23, 2022. This Settlement Agreement shall, when the Parties fully execute it, replace the Settlement Term Sheet, which shall then be of no further force and effect and considered terminated at such time without any further action by the Parties to the Action or their respective counsel.

3.    PLAINTIFFS' INDIVIDUAL SETTLEMENTS PROVISIONS

3.1.    Plaintiffs' Individual Settlements.  The United States of America will pay Plaintiffs' Individual Settlements in a total amount of $475,000.00 for settlement of their individual claims under the Federal Tort Claims Act ("FTCA"). Of that amount, class representatives Zapote Hernández and González Cruz shall receive $36,893.20 each. The United States of America will by the Settlement Proceeds Distribution Deadline pay Plaintiffs' Individual Settlements by Electronic Funds Transfer of $475,000.00 to the Trust Account for the Southern Poverty Law Center, which agrees to distribute Plaintiffs' Individual Settlements among Plaintiffs. Plaintiffs shall dismiss the claims against the United States with prejudice by the Settlement Proceeds Distribution Deadline. In consideration of their Individual Settlements, Plaintiffs shall not be eligible to receive any payment pursuant to Paragraph 4.1 as members of the Class.

12

3.2. <u>Immigration-Related Terms</u>. The United States of America will provide the following to Plaintiffs with respect to their immigration cases:

(a) <u>Pulido</u>: If USCIS does not favorably adjudicate her adjustment of status petition prior to the Effective Date, ICE will issue deferred action, absent a change in circumstances, valid for one year from the Effective Date. Pulido may then apply to USCIS for employment authorization or renewal of employment authorization while her deferred-action status is in effect to the extent permitted under the immigration rules and regulations.

(b) <u>Zelaya</u>: If USCIS does not favorably adjudicate his pending adjustment of status petition prior to the Effective Date, ICE will issue deferred action, absent a change in circumstances, valid for one year from the Effective Date. Zelaya may then apply to USCIS for employment authorization or renewal of employment authorization while his deferred-action status is in effect to the extent permitted under the immigration rules and regulations.

(c) <u>Guerrero</u>: Upon request by Guerrero or his authorized immigration counsel, ICE agrees to join a motion to dismiss his removal proceedings. After removal proceedings are dismissed (or if such proceedings are otherwise terminated without favorable adjudication of his pending application for relief), ICE will grant deferred action valid for two years from the date such proceedings are dismissed or otherwise terminated without relief granted through the Executive Office for Immigration Review, absent a change in circumstances, with opportunity to apply for renewal. Guerrero may then apply to USCIS for employment authorization or renewal of employment authorization while his deferred-action status is in effect to the extent permitted under

13

the immigration rules and regulations. The United States of America agrees to take no position on any filing Guerrero makes in this case, Case No. 3:19-cv-62, regarding Form I-918, Supplement B.

(d)    González Cruz:  ICE will issue deferred action valid for two years from the Effective Date, absent a change in circumstances, with opportunity to apply for renewal. González Cruz may then apply to USCIS for employment authorization while her deferred action status is in effect to the extent permitted under the immigration rules and regulations.

(e)    Mendoza:  ICE will cancel the reinstated removal order and grant deferred action for two years from the Effective Date, absent a change in circumstances, with opportunity to apply for renewal. Mendoza may then apply to USCIS for employment authorization while her deferred action status is in effect to the extent permitted under the immigration rules and regulations

(f)    Zapote Hernández:  ICE agrees to parole Zapote Hernández into the United States of America so long as there is no derogatory information (*e.g.*, significant criminal conduct, national security concerns) and Zapote Hernández promptly responds to all requests for information by ICE[1] within 30 days of the request. If Zapote Hernández fails to respond to any request for information by ICE within the stated timeframe, the United States' obligations under this Paragraph are deemed completed and it is no longer obligated to parole Zapote Hernández. If granted parole by ICE, Zapote Hernández must present himself at an agreed-upon port of entry during the validity of the parole document. ICE will not re-issue the parole document if Zapote Hernández fails to appear absent exigent circumstances preventing Zapote Hernández from presenting himself (*e.g.*, illness or injury requiring hospitalization). If paroled by the United States, ICE will issue a notice

---

[1] Any correspondence concerning the parole process for Zapote Hernandez issued by ICE shall be sent to the contact information he provides ICE for such correspondence.

to appear ("NTA") and place him in removal proceedings. ICE will not pay for his travel. He must have a valid travel document (passport) in his possession. Zapote Hernández may then apply to USCIS for employment authorization or renewal of employment authorization to the extent permitted under the immigration rules and regulations.

3.3 <u>Plaintiffs' Counsel's Fees and Expenses</u>. The United States of America will pay by the Settlement Proceeds Distribution Deadline a total of $150,000.00 by Electronic Funds Transfer to the Trust Account of the Southern Poverty Law Center, which agrees to distribute $75,000.00 to the National Immigration Law Center, for Plaintiffs' Counsel's Fees and Expenses. Plaintiffs' Counsel's Fees and Expenses shall encompass: (a) all work performed and costs and expenses incurred by, or at the direction of, any Plaintiffs' Counsel; (b) all work to be performed and costs to be incurred in connection with approval by the Court of the Settlement and the termination of this Action, including any work defending the Settlement or any aspect of challenge to or approval of the Settlement on appeal or other direct, collateral or other attack; and (c) all work to be performed and costs and expenses, if any, in connection with administering the Settlement through the termination of the Action with prejudice.

All Parties have agreed that no other moneys shall be paid to Plaintiffs' Counsel for their fees and expenses related to this Action. Except as provided in this Paragraph, each Party shall bear his, her, or its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, and settlement of the Action.

15

4.    CLASS SETTLEMENT PROVISIONS

4.1.    Allocation of Class Settlement Amount.  Subject to Court approval and the conditions in this Agreement, and in consideration of the mutual covenants and promises set forth herein, IRS Planner Defendant Nicholas Worsham and DHS Planner Defendant Ronald J. Appel, Jr., through their designees, agree to make a total settlement payment that does not exceed the Class Settlement Amount.  The Parties agree, subject to Court approval, that the Class Settlement Amount shall be apportioned as follows:

Each Settlement Class Member shall be entitled to an equal *pro rata* portion of the Class Settlement Amount, as his, her, or their Individual Class Member Settlement Payment, provided that the Settlement Class Member is a Qualified Class Member.  Individual Class Member Settlement Payments shall be awarded to each Qualified Class Member from the Class Settlement Amount based on the Class Settlement Amount divided by the total number of Qualified Class Members (not including Plaintiffs because, pursuant to Paragraph 3.1, they shall not be eligible to receive any payment pursuant to this Paragraph as members of the Class).

The Parties acknowledge and agree that the equal shares division used to calculate Individual Class Member Settlement Payments does not imply that all elements of damages alleged in the Action are not being considered.  The equal shares division was devised as a practical tool to simplify the settlement process.

Any Class Member who is not a Qualified Class Member shall not receive an Individual Class Settlement Payment, but if the individual is a Settlement Class Member, such individual shall still be bound by the terms of the Class Settlement, including resolving all Released Claims.

16

4.2. <u>Class Member Confirmation Letter</u>. ICE and the United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") will sign a letter (attached as Exhibit C to this Agreement) for each Class Member who so requests confirming their status pursuant to this Action. ICE will establish a central email box for each Class Member seeking such a letter from ICE and USAO-WDVA to accompany his, her, or their immigration relief application. The email box shall not circumvent the ordinary application submission and review process and will exist for one year from the dismissal of the Action with prejudice. The email inbox will be monitored by ICE.

4.3. <u>Taxation</u>. Plaintiffs and Individual Defendants agree to the following tax-related provisions.

(a) Plaintiffs and Individual Defendants agree that the Individual Class Member Settlement Payments will be considered final payment for all alleged damages claimed by all Plaintiffs and on behalf of the Class and will be, if required, reported as such to each Qualified Class Member on an IRS Form 1099-MISC, if applicable.

(b) The Settlement Administrator will issue appropriate tax forms to each Qualified Settlement Class Member consistent with the foregoing provisions.

(c) Plaintiffs and Individual Defendants agree that the Class Settlement Amount is intended to qualify as a qualified settlement fund ("QSF") pursuant to section 468(B) of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder. Furthermore, the Settlement Administrator is designated as the "Administrator" of the QSF for purposes of section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes

17

owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l) of the Treasury Regulations or any other applicable law or with respect to the QSF.

(d)     All Parties represent and agree that they have not sought or received, and shall not rely on, advice or representations from the other Party or his, her, their, or its agents regarding the tax treatment of any payments made under this Agreement.

5.     <u>RELEASE PROVISIONS</u>

5.1.     <u>Non-Admission of Liability</u>.  The Parties enter this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense, and risk of continued litigation.  This Agreement is in no way intended to be nor should it be construed as an admission of liability or fault on part of the United States of America, its agents, servants, or employees, and Defendants specifically deny that they are liable to Plaintiffs or the Class.  Defendants do not admit, and specifically deny, that they have violated the United States Constitution, 42 U.S.C. § 1985, 42 U.S.C. § 1986, any federal, state, or local law, statute, or ordinance, any regulation, policy, procedure, or guideline promulgated pursuant to any statute, or any other applicable law, regulation, or legal requirement or authority; violated any policies issued by the United States, including, but not limited to, any agency thereof; violated or breached any duty; or engaged in any other wrongful or unlawful conduct with respect to Plaintiffs or any Class Member.  Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants, or any of them, of any such violation, breach, wrongful conduct, or failure to comply with any applicable law or requirement.  Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or

18

received as evidence in any action or proceeding to establish any liability or admission on the part of any Defendants or to establish the existence of any condition constituting a violation of, or a non-compliance with, (a) any federal, state, local, or other law, statute, or regulation, or (b) any policy, procedure, or directives of DHS, IRS, DOJ, or any other government department or agency.

5.2.    Dismissal of Claims. Subject to the Final Approval Order and the conditions specified herein, and in consideration of the mutual covenants and promises set forth herein, a Judgment shall be entered consistent with this Agreement, including that Plaintiffs and all the Settlement Class Members shall fully and finally dismiss with prejudice all Released Claims, to the greatest extent permitted by law.

5.3.    General Release of Claims by Plaintiffs and Class Members.  Plaintiffs and the Settlement Class Members stipulate and agree to the general release of Defendants and all agents, servants, and employees of the United States of America with respect to the Claims and any and all other claims arising from the subject matter that gave rise to the FAC as follows:

(a)    Upon the entry of the Final Approval Order and Judgment and to the maximum extent permitted by law, Plaintiffs and Settlement Class Members and all persons authorized or purporting to act on their behalf or authorized or purporting to assert a claim by, for, under, or through them, including, but not limited to, their dependents, agents, heirs, assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, hereby do and shall be deemed to have fully, finally, and generally released, settled, compromised, relinquished, and discharged any and all of the Released Parties from the Claims and any and all other legal or equitable claims and causes of action,

19

known or unknown, asserted or unasserted, that he, she, or they has, have, or may have had against Defendants, or any of them, or any of the Released Parties, that arise from or relate to, in whole or in part, the facts, claims, and/or allegations in the FAC, including, but not limited to, the Claims, any claim under the FTCA, the United States Constitution, 42 U.S.C. § 1985, 42 U.S.C. § 1986, any federal or state law or regulation, state or federal common law, or any equitable doctrine, for the time period up to and including the date of execution of this Agreement.

(b)     The claims released in this Paragraph 5.3 shall be collectively included as part of the "Released Claims" or "Settled Claims" under this Agreement. The Qualified Class Members are bound by the release of the Settled Claims in their entirety regardless of whether they deposit or cash their Individual Class Member Settlement Payment, and the Settlement Class Members are bound without receiving an Individual Class Member Settlement Payment.

5.4.     <u>Communication to the Class</u>. The Class Notice (attached as Exhibit A) will advise all Class Members of the binding nature of the release of claims and such notice shall have the same force and effect as if each Class Member executed the Agreement.

5.5.     <u>Representation by Plaintiffs, Class Members, and Class Counsel</u>. Plaintiffs, Class Members, and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged, except as set forth herein.

5.6.     <u>Release of Claims by Plaintiffs' Counsel</u>. Upon receipt of Plaintiffs' Counsel's Fees and Expenses of no more than $150,000.00, Plaintiffs' Counsel shall be deemed to have fully and

finally released Defendants and the Released Parties from any and all claims for attorneys' fees and

expenses/costs arising from the Action and any claims released by the Plaintiffs and Class Members.

6.      NON-WAIVER OF RIGHT TO CHALLENGE CLASS CERTIFICATION.

Individual Defendants do not waive, and instead expressly reserve, their right to challenge

the propriety of class certification for any purpose should the Court not grant final approval of the

Class Settlement.

7.      CLASS NOTICE AND CLASS SETTLEMENT ADMINISTRATION PROCESS

7.1.    Identification of Class Members.   Within 15 business days after entry of the

Preliminary Approval Order, Class Counsel shall provide the Settlement Administrator a database

containing the following information:  full name, last known address, email address (if available) of

all Class Members.  Class Counsel agrees to provide the list in an electronic format reasonably

acceptable to the Settlement Administrator.  The Settlement Administrator (along with any of its

agents) will keep the lists confidential, use them only for the purposes described herein, and

safeguard or return them to Class Counsel upon completion of the settlement administration process.

ICE will provide any known contact information for class members whose current addresses Class

Counsel is unable to obtain to the extent ICE has any such information, the information is readily

accessible, and ICE is able to reasonably verify that the information pertains to the class member.

If an individual whose name does not appear on the list Plaintiffs' counsel submits a claim form to

the Settlement Administrator or seeks to participate in the Class Settlement, Class Counsel shall be

empowered to ascertain the individual's membership in the class through reasonable means,

including through reference to discovery in this case, evidence of employment at Southeastern

21

Provision, or other method Class Counsel deems appropriate. Counsel for the United States shall assist Class Counsel, if necessary and to the extent possible, in ascertaining the individual's status as a Class Member.

7.2. <u>Individual Class Member Settlement Payment Calculation</u>. Based on the information in the Class Member list, the Settlement Administrator shall promptly calculate the estimated Individual Class Member Settlement Payment based on equal *pro rata* shares for every Class Member, an estimate of which will be included in the Claim Form to be sent to that Class Member, and shall prepare and e-mail a spreadsheet setting forth those calculations to Plaintiffs' and Defense Counsel no fewer than 5 business days before mailing the Notice Packet to Class Members. The Parties will present a mutually agreed upon Class Notice to the Court at the same time as the joint motion for preliminary approval of the class settlement.

7.3. <u>Notice Procedure</u>. Within 20 days after the Preliminary Approval Order, the Settlement Administrator shall mail the Notice Packet to each Class Member whose address information is known and email the Notice Packet to each Class Member whose email address is known. Class Counsel will file a Notice with the Court within 5 business days after completion of the mailing. The Parties and the Settlement Administrator may correct immaterial errors on the Notice Packet or other mailed materials without approval from the Court, provided the changes do not materially alter the Preliminary Approval Order. Prior to this mailing, the Settlement Administrator shall conduct a National Change of Address check as to each address. The mailing shall be sent by first-class U.S. Mail, postage pre-paid. The date that the Settlement Administrator mails the Notice Packet is the Mailing Date. It shall be conclusively presumed that every Class

22

Member whose Notice Packet is not returned to the Settlement Administrator as undeliverable within 30 calendar days after the Mailing Date has received the Notice Packet.

(a)     The Settlement Administrator shall promptly re-mail any Notice Packet returned by the Post Office with a forwarding address.  It shall be conclusively presumed that a Class Member whose re-mailed Notice Packet is not returned to the Settlement Administrator as undeliverable within 15 days after re-mailing has received the Notice Packet.

(b)     If a Notice Packet is returned because of an undeliverable address, the Settlement Administrator shall conduct a skip trace to locate a correct address.  Notices returned as undeliverable by the USPS will be date-stamped and recorded in the database of the Settlement Administrator. The Settlement Administrator will notify Class Counsel on a weekly basis of the names of individuals whose Notice Packet was returned as undeliverable.  There will be one search by the Settlement Administrator, via U.S. Postal Service Records.  One supplemental Notice Packet will be mailed to each member of the Class whose notice is returned to the Settlement Administrator within 30 calendar days of the initial mailing of the notices by the Settlement Administrator, or other such notice as ordered by the Court.  Subject to the terms of the Preliminary Approval Order, the Parties agree that the Settlement Administrator shall have satisfied its obligations for mailing the Notice Packets to the Class Members by complying with the terms set forth herein.

(c)     Class Counsel shall provide to the Court, at or before the Final Approval Hearing, a declaration from the Settlement Administrator confirming that the Notice Packets were mailed to all Class Members as required by this Agreement, as well as any additional information Class Counsel and Counsel for Individual Defendants deem appropriate to provide to the Court.

23

(d)     Plaintiffs and Individual Defendants intend that reasonable means be used to maximize the probability that all Class Members shall receive the Class Notice.  To account for the unreliability of mail service in Mexico and Central America, where some class members reside, Class Counsel shall be empowered to distribute the Notice and Claim Form to Settlement Class Members via electronic mail, facsimile, or other means to ensure Class Members receive the notice.

(e)     The Class Notice shall explain that if a Class Member does not opt out of the Class Settlement and submits a timely, valid, and complete Claim Form, such Class Member will receive the Individual Class Member Settlement Payment pursuant to the terms of this Agreement.

7.4.     Claim Form Procedure.  Any Class Member who wishes to become a Qualified Class Member and receive an Individual Class Member Settlement Payment must fully complete a Claim Form, including signing the Claim Form, and mail, email, or fax the completed Claim Form to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period, or an email or fax date on or before the expiration of the Notice Period.  Any Class Member who fails to submit a timely, complete, and valid Claim Form shall be barred from receiving the Individual Class Member Settlement Payment.  Class Members who do not return a valid Claim Form with a postmark date on or before the expiration of the Notice Period forfeit their Individual Class Member Settlement Payment but shall remain subject to the release of the Released Claims as defined in this Agreement to the maximum extent permitted by law.

7.5.     Deceased Plaintiffs or Class Members.   Where a Plaintiff or Class Member is deceased, upon receipt of proper identification and documentation of the payee's interest, payment will be made to the Class Member's estate or, in the event there is no estate, to the Class Member's

24

next of kin in the following priority: (1) spouse; (2) children; (3) parents; (4) siblings; and (5) other relatives. A proposed Next of Kin Form is attached as Exhibit D.

7.6.    Opt-Out Procedure.  Any Class Member who wishes to be excluded from the Class Settlement may seek exclusion under this Paragraph.  Unless a Class Member timely and properly opts out of the Class Settlement described in this Agreement, he, she, or they shall be a Settlement Class Member and shall be bound by all terms and conditions of this Agreement and shall also be bound by the Court's Final Approval Order enjoining all Settlement Class Members from pursuing or seeking to reopen any of the Settled Claims against the Released Parties.  A Class Member will not be entitled to opt out of the Class Settlement established by this Agreement unless he or she submits a timely Opt-Out Request as provided in this Paragraph.  An Opt-Out Request must be: (i) made in writing; (ii) state the full name of the Class Member seeking exclusion; (iii) include a statement that the Class Member seeking exclusion from the Class Settlement requests exclusion from the Class and does not wish to participate in the Class Settlement; (iv) signed by the Class Member seeking exclusion from the Class Settlement; and (v) mailed to the Settlement Administrator with a postmark date on or before the expiration of the Notice Period or emailed with a date on or before the expiration of the Notice Period.  The Class Member must complete the Opt-Out Request seeking exclusion from the Class Settlement.  Any Class Member who properly submits a timely, complete, and valid Opt-Out Request using this procedure will not be entitled to an Individual Class Member Settlement Payment and will not be bound by the Class Settlement or have any right to object, appeal, or comment thereon.

(a)     Upon receipt of any Opt-Out Request within the Notice Period, the Settlement Administrator shall review the request to verify the information contained therein and to confirm that the request complies with the requirements of this Agreement.

(b)     Any Class Member who fails to submit a timely, complete, and valid Opt-Out Request shall be barred from opting out of this Agreement or the Class Settlement.  The Settlement Administrator shall not review or consider any Opt-Out Request postmarked after the end of the Notice Period or received via email or fax after the end of the Notice Period.  It shall be conclusively presumed that, if an Opt-Out Request is not postmarked on or before the end of the Notice Period or is not received by the Settlement Administrator, the Class Member did not make the request in a timely or valid manner. Under no circumstances shall the Settlement Administrator have the authority to extend the deadline for Class Members to submit an Opt-Out Request.

7.7.    Opt-Out Requests. If more than 20 Class Members timely opt out of the Class Settlement, or if more than 5 Class Members file individual lawsuits by the end of the Notice Period, Individual Defendants, collectively, shall have the sole and absolute discretion to rescind/void the Settlement Agreement within 20 days after receiving from the Settlement Administrator the final list of opt-outs.  Counsel for Individual Defendants agree to meet and confer in good faith with Class Counsel before rescinding or voiding the Settlement Agreement.  If Individual Defendants rescind/void the Settlement Agreement, Individual Defendants shall provide written notice of such rescission to Class Counsel.  Such rescission shall have the same effect as a termination of the Settlement Agreement for failure to satisfy a condition of settlement, and the Settlement Agreement shall become null and void and have no further force or effect.  If Individual Defendants choose to terminate the Settlement Agreement under this provision, they shall be responsible to pay the

26

Settlement Administrator's fees and costs incurred to that point. Class Counsel represent that they do not have any present intentions to represent any Class Member who opts out of the Class Settlement in pursuing any claim separately against Defendants.

7.8.    Objections to Class Settlement.  Any Settlement Class Member may object to the Class Settlement.  Settlement Class Members who wish to object must send their written objections to the Court by the close of the Notice Period.  All objections will be scanned into the electronic case docket and the Parties will receive electronic notices of filing.  The Parties agree that any dispute that cannot be resolved by Class Counsel and Counsel for Individual Defendants may be brought before the Court before final approval of the Class Settlement.  The Class Notice will establish the procedures for objections.

Class Members who fail to timely file and serve such a written statement of objection shall be foreclosed from making any objection to this Class Settlement.  Only Settlement Class Members may object to the Class Settlement.  If an objector intends to appear at the Final Approval Hearing, either in person or through an attorney of his, her, or their choice, he, she, or they must also timely serve and file, with his, her, or their objection, a Notice of Intention to Appear.  This Paragraph shall be strictly applied and enforced.  Failure to comply with its terms shall render an objection ineffective and waived.

7.9.    Reports.  The Settlement Administrator shall give Class Counsel and Counsel for Individual Defendants bi-weekly updates on the number of Claim Forms and Opt-Out Requests it receives.  Within 10 days after the close of the Notice Period, the Settlement Administrator will

provide Class Counsel and Counsel for Individual Defendants a list by name of all Class Members who timely opted out under Paragraph 7.6.

7.10. <u>Confidentiality.</u> The Settlement Administrator (along with any of its agents) shall represent and warrant that it will: (a) provide reasonable and appropriate administrative, physical and technical safeguards for any personally identifiable information ("PII"); (b) not disclose the PII to Plaintiffs or any party or third parties, including agents or subcontractors; (c) not disclose or otherwise use the PII other than to carry out its duties as set forth herein; and (d) continue to protect the PII upon termination of its services. The Settlement Administrator shall date stamp documents it receives regarding this Settlement, including Claim Forms, opt out requests, and any correspondences and documents from any Class Members.

7.11. <u>Funding and Distribution of Class Settlement</u>. Within 20 days after the Effective Date, Defendants Worsham and Appel, through their designees, shall transfer to the Settlement Administrator an amount equal to the Class Settlement Amount. The delivery of the Class Settlement Amount to the Settlement Administrator shall constitute full and complete discharge of the entire obligation of Individual Defendants under this Agreement. Once Defendants Worsham and Appel have made such payments, they will be deemed to have satisfied all terms and conditions under this Agreement, shall be entitled to all protections afforded to Defendants under this Agreement, and shall have no further obligations under the terms of the Agreement regardless of what occurs with respect to those sums. Additionally, no Released Party shall have any further obligation or liability to Plaintiffs, Class Members, and Class Counsel under this Agreement, except as set forth in this Agreement with regard to the immigration-related terms to Plaintiffs and the class member confirmation letter for the Class set forth in Paragraphs 3.2 and 4.2.

28

(a)     The Settlement Administrator will endeavor to distribute the Individual Class Member Settlement Payments to Qualified Class Members by the Settlement Proceeds Distribution Deadline.  The Settlement Administrator shall be deemed to have timely disbursed all such payments if it distributes Individual Class Member Settlement Payments for all Qualified Class Members within 60 days of the Settlement Proceeds Distribution Deadline.  No person shall have any claim against the Settlement Administrator, Individual Defendants, Class Counsel, Counsel for Individual Defendants, or any other agent designated by them, based upon the distribution of Individual Class Member Settlement Payments made substantially in accordance with this Agreement or further orders of the Court.

(b)     The Individual Class Member Settlement Payments shall be paid to each Settlement Class Member by way of a single check or by the money transfer method elected by the Individual Class Member, which may include a wire transfer or money transfer service.

(c)     Any settlement checks or other money transfers that are not claimed or not negotiated within 180 days after distribution by the Settlement Administrator shall be void.  The Settlement Administrator shall send one reminder postcard to any Individual Class Member Settlement Payment recipients who did not claim or did not negotiate their settlement checks or other money transfers within 60 days after distribution by the Settlement Administrator to claim and/or negotiate their settlement checks or other money transfers.  Any funds not distributed after the expiration of the settlement checks or other money transfers shall be paid in equal shares to the Qualified Class Members who claimed or negotiated their previous Individual Class Member Settlement Payments, except that, should the unclaimed funds be less than $40,000.00, those funds

29

will be paid to the Court approved *cy pres* beneficiary of the Class Settlement. The Parties propose The McNabb Center in Morristown, Tennessee as the *cy pres* beneficiary.

(d)     Defendants shall not be obligated to make any payments contemplated by this Agreement until the conditions set forth in this Agreement occur.

7.12.  <u>CAFA Notice</u>.  Pursuant to the requirements of the CAFA, within 10 days after this Settlement is filed in Court, Individual Defendants will prepare a notice of the Class Settlement pursuant to CAFA and the Settlement Administrator will serve such notice to the United States Attorney General and appropriate state officials.  The notice shall comply with the requirements of CAFA. Individual Defendants shall file a Notice with the Court within five (5) business days after completion of the required CAFA mailings.

8.     <u>COURT APPROVAL AND EFFECTIVE DATES</u>

8.1.   <u>Binding Effect of Agreement on Class Members</u>.  Upon final Court approval of the Class Settlement, all Settlement Class Members shall be bound by this Agreement, and the Action and the Settled Claims shall be fully and finally dismissed with prejudice and released as against the Released Parties to the greatest extent permitted by law.   In addition, unless a Class Member effectively opts out of the Class Settlement, he or she shall be bound by the Court's Order enjoining all Settlement Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties to the greatest extent permitted by law.

8.2.   <u>Preliminary Approval</u>.  Upon execution of this Agreement, Plaintiffs and Individual Defendants shall file a joint motion in the Action requesting that the Court enter a Preliminary Approval Order as follows:

30

(a)     Approving the form of the Class Notice and the Claim Form, and requiring that individualized Class Notice and Claim Form be sent to Class Members;

(b)     Approving the plan for the provision of notice to Class Members, as stated herein and in the Class Notices;

(c)     Scheduling the Final Approval Hearing for consideration of final approval of the Class Settlement that is at least 120 days after the date the Preliminary Approval Order is entered so that the Claims Period will expire before the Final Approval Hearing;

(d)     Approving the procedure for Class Members to opt out of the Class Settlement and the date after which no Class Member shall be allowed to submit a request to opt out;

(e)     Approving the procedure for Settlement Class Members to object to the Class Settlement and the date after which no Class Member shall be allowed to object;

(f)     Representing that the Parties agree that there is no admission of liability by any Party, and that stating that a condition of settlement is an acknowledgment that no Plaintiff, Class Member, Defendant, Class Counsel, and/or Defense Counsel is the "prevailing party;" and

(g)     Approving the procedure for Class Members to submit a Claim Form and the date after which no Class Member shall be allowed to submit a Claim Form.

Plaintiffs agree to provide the joint motion for preliminary approval and the proposed order accompanying the motion to Individual Defendants for review no later than five days before the filing date.

8.3.    Settlement Compliance.  The Parties and their counsel, to the extent consistent with the governing Rules of Professional Conduct, agree that they shall not seek to solicit or otherwise

31

encourage, directly or indirectly, Class Members to submit an Opt-Out Request or an objection to the Class Settlement or to appeal from the Preliminary Approval Order, Final Approval Order, or Judgment. The Parties and their counsel also agree that they will not discourage, directly or indirectly, any Class Member from filing a Claim Form or direct any of their agents to take such action. Defendants agree that they shall not institute or prosecute any legal action or other adjudicatory proceeding against any Plaintiff, Class Member, or witness deposed in this Action solely because of his, her, or their participation in this Action or the Claim Process. Each Party and his, her, or their Counsel agree not to utilize any transcript of a deposition taken in this Action or any confidential materials (as identified in Paragraph 9.2 of this Settlement Agreement) produced in this Action by another Party or a third party against any Plaintiff, Class Member, or Defendant, except in litigation between the Parties where such use is necessary to defend against any future claim; provided, however, that a breach of this provision by a Party allows the other Parties to take such remedial measures as necessary to counter the harm of such breach.

8.4 <u>Final Approval Order and Judgment</u>. Plaintiffs and Individual Defendants will request that the Court enter, after the Final Approval Hearing approving the Class Settlement, a Final Approval Order and Judgment, finding this Agreement is fair, just, equitable, reasonable, adequate, and in the best interests of the Class; permanently enjoining all Settlement Class Members from pursuing or seeking to reopen Settled Claims against the Released Parties; requiring the Parties to carry out the provisions of this Agreement; finding that the notice given to the class satisfied the requirements of due process and Rule 23(e) of the Federal Rules of Civil Procedure; dismissing the claims of the Individual Plaintiffs and Settlement Class Members with prejudice; and retaining jurisdiction to enforce the provisions of this Settlement.

8.5    Entry of Final Judgment.  Plaintiffs (or Plaintiffs jointly with Defendants) will request that the Court enter, after the Final Approval Hearing, a Final Approval Order and a Judgment as agreed to by the Parties.

8.6.    Effective Date of Agreement.  The "Effective Date" of this Agreement shall be (1) if no objections are filed, the date of final approval of this Settlement; or (2) if objections are filed, the last date by which all appeals of the judgment entered in the Action could be filed or when actual appeals or other collateral attacks are exhausted such that the judgment becomes final.  The Effective Date is conditioned upon all the following occurring:

(a)    This Agreement has been signed by the Parties and Class Counsel;

(b)    The Court has entered a Preliminary Approval Order consistent with this Agreement;

(c)    The Notice Packet has been mailed to the Class Members as ordered by the Court in this Action;

(d)    The Court has entered a Final Approval Order consistent with this Agreement;

(e)    The Court has entered a judgment dismissing the Action consistent with this Agreement; and

(f)    The Settlement Administrator has provided Defense Counsel with written wire/bank transfer instructions, including the Settlement Administrator's address, the bank name, bank address, account number, account name, ABA number, and SWIFT Code.

8.7.    Automatic Voiding of Agreement if Settlement Not Finalized.  If for any reason the Settlement set forth in this Agreement does not become final, the Settlement shall be null and void and all orders, judgment, and dismissal entered pursuant to this Agreement shall be vacated, and the

33

Parties will be returned to the status quo prior to entering this Agreement with respect to the Action as if the Parties had never entered into this Agreement. Moreover, the Agreement (including all exhibits, drafts, and related documents, papers, and communications) and all negotiations, court orders, and proceedings relating thereto shall be without prejudice to the rights of all Parties hereto, and evidence relating to the Agreement (including all exhibits, drafts, and related documents, papers, and communications) and all negotiations shall not be admissible or discoverable in the Action or otherwise.

      8.8.   <u>Continuation of Negotiations</u>. Should the Court decline to preliminarily approve this Class Settlement as written, Plaintiffs and Individual Defendants agree to use their best efforts to renegotiate the terms of this Class Settlement in a form so as to obtain approval from the Court while retaining those terms that are central to this Class Settlement. Plaintiffs and Individual Defendants shall not seek to avoid the terms of this Class Settlement, unless the Court indicates that it is unwilling to approve a Class Settlement that preserves the material terms and conditions of this Class Settlement. In that event, Plaintiffs and Individual Defendants agree to file a joint motion requesting that the Court lift any stay in place and enter an amended scheduling order. In such case, the Action shall proceed in all material respects as if the Joint Stipulation and Settlement Agreement and related orders had not been executed, and Plaintiffs and Individual Defendants may assert their claims and defenses therein.

      8.9   <u>Termination.</u> Either Plaintiffs or Defendants may terminate this Settlement if, after submitting the Settlement Agreement, the Court declines to enter the final approval order or judgment in substantially the form submitted by the Parties, or if the Settlement Agreement as agreed

34

does not become final because of appellate court action. Termination shall have the following effects:

       a.     The Settlement Term Sheet and the Settlement Agreement shall be terminated and have no force or effect, and no Party shall be bound by any of its terms.

       b.     If the Settlement Agreement is terminated, Defendants shall have no obligation to make any payments to any party, class member, or attorney.

       c.     The Settlement Agreement and all negotiations, statements, and proceedings relating thereto shall be without prejudice to the rights of any of the parties, all of whom shall be restored to their respective positions prior to the Settlement.

In the event that the Court does not grant Final Approval of the Class Settlement, Plaintiffs and Individual Defendants agree to file within 10 business days of such order a joint motion requesting that the Court lift any stay in place and enter an amended scheduling order. In such case, the Action shall proceed in all material respects as if the Joint Stipulation and Settlement Agreement and related orders had not been executed, and Plaintiffs and Individual Defendants may assert their claims and defenses therein.

8.10.   Limit on Admissibility.  All Parties agree that the doctrines of *res judicata* and collateral estoppel shall not apply, and neither the Settlement Term Sheet, Settlement Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Action or any other action for any purpose, except to enforce or interpret the Agreement.

35

9. <u>GENERAL PROVISIONS</u>

    9.1.   <u>Notices</u>. All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or by first class mail to the Settlement Administrator appointed by the Court and to counsel at their respective addresses as set forth below:

<u>CLASS COUNSEL</u>

Norma Ventura
Julia Solórzano
Sharada Jambulapati
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
T: (404) 521-6700
F: (404) 221-5857
norma.ventura@splcenter.org
julia.solorzano@splcenter.org
sharada.jambulapati@splcenter.org

Meredith B. Stewart
SOUTHERN POVERTY LAW CENTER
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
T: (504) 486-8982
F: (504) 486-8947
meredith.stewart@splcenter.org

Joanna Elise Cuevas Ingram
NATIONAL IMMIGRATION LAW
  CENTER
P.O. Box 170392
Brooklyn, NY 11217
T: (213) 377-5258
F: (213) 377-5258
cuevasingram@nilc.org

Phillip F. Cramer
SPERLING & SLATER, P.C.
150 3rd Avenue South, Suite 1100

Eben P. Colby
500 Boylston Street
Boston, MA 02116
T: (617) 573-4855
F: (617) 305-4855
Eben.Colby@probonolaw.com

Michelle Lapointe
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 247
Decatur, GA 30031
T: (213) 279-2508
F: (213) 639-3911

Araceli Martinez-Olguin
Facundo Bouzat
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
T: (213) 639-3900
F: (213) 639-3911
Martinez-olguin@nilc.org
bouzat@nilc.org

William L. Harbison
John L. Farringer IV
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
T: (615) 742-4200
F: (615) 742-4539
bharvison@srvhlaw.com

Nashville, TN 37201                          jfarringer@srvhlaw.com
T: (312) 641-3200
F: (312) 641-6492
pcramer@sperling-law.com

Jeremy A. Berman
One Manhattan West
New York, NY 10001
T: (212) 735-2032
F: (917) 777-2032
Jeremy.Berman@probonolaw.com

DEFENSE COUNSEL

Donald J. Aho                                J. Ford Little
Zachary H. Greene                            J. Chadwick Hatmaker
Bradford G. Harvey                           Kaitlyn E. Hutcherson
Alexander C. Vey                             David Cantrell
MILLER & MARTIN, PLLC                        WOOLF, McCLANE, BRIGHT, ALLEN
1200 Volunteer Building                      & CARPENTER, PLLC
832 Georgia Avenue                           Post Office Box 900
Chattanooga, Tennessee 37402                 Knoxville, TN 37901 0900
Telephone (423) 756-6600                     Telephone: (865) 215 1000
don.aho@millermartin.com                     Facsimile: (865) 215 1001
zac.greene@millermartin.com                  flittle@wmbac.com
brad.harvey@millermartin.com                 chatmaker@wmbac.com
alex.vey@millermartin.com                    khutcherson@wmbac.com
*On Behalf of IRS Planner Defendants*        dcantrell@wmbac.com
                                             *On Behalf of DHS Planner Defendants*

Charles K. Grant
Clarence Risin                               Mary Ann Stackhouse
Thomas J. Aumann                             Lynn C. Peterson
Daphne Bugelli                               T. Mitchell Panter
BAKER, DONELSON, BEARMAN,                    LEWIS, THOMASON, P.C.
CALDWELL & BERKOWITZ, P.C.                   P.O. Box 2425
1600 West End Avenue, Suite 2000             Knoxville, TN  37901
Nashville, Tennessee 37203                   Telephone: (865) 546-4646
Telephone: (615) 726-5600                    MStackhouse@LewisThomason.com
Facsimile: (615) 726-0464                    LPeterson@LewisThomason.com
cgrant@bakerdonelson.com                     MPanter@LewisThomason.com
crisin@bakerdonelson.com                     *On Behalf of Defendant Witsell*
taumann@bakerdonelson.com

37

dbugelli@bakerdonelson.com

Chelsea N. Hayes
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
602 Sevier Street, Suite 300
Johnson City, Tennessee 37604
Telephone: (423) 928-0181
Facsimile: (423) 979-7663
cnhayes@bakerdonelson.com

Savannah D. McCabe
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
Telephone: (865) 971-5170
Facsimile: (865) 684-6808
smccabe@bakerdonelson.com
*On Behalf of IRS Non-Planner Defendants*

Laura Day Taylor
Krista Consiglio Frith
Kari M. Munro
U.S. Attorney's Office
P.O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile (540) 857-2283
Laren.Taylor@usdoj.gov
Krista.Frith@usdoj.gov
Kari.Munro@usdoj.gov
*On Behalf of the United States of
America*

Jimmie C. Miller
Joseph B. Harvey
HUNTER SMITH & DAVIS, LLP
P.O. Box 3740
Kingsport, TN 37664
Telephone: (423) 378-8800
Facsimile: (423) 378-8801
jmiller@hsdlaw.com
jharvey@hsdlaw.com

Stephen M. Darden
HUNTER SMITH & DAVIS, LLP
100 Med Tech Parkway, Suite 110
Johnson City, TN 37604
Telephone: (423) 283-6303
Facsimile: (423) 283-6301
sdarden@hsdlaw.com
*On Behalf of DHS Non-Planner Defendants*

9.2.    <u>Confidentiality/Protection of Personal Information</u>.  The Parties shall comply with

the Stipulated Protective Order in this Action (ECF No. 361) regarding the destruction or return of

all confidential materials within sixty days of the Effective Date.  The Parties further agree to return

or certify the destruction of all documents, including, but not limited to, employment records,

medical records, texts, emails, and social media posts, produced to them in discovery in this Action

38

by any party or non-party, as well as all deposition transcripts and recordings within 60 days of the Effective Date. The Parties may maintain copies of pleadings, motions, and other papers filed on the court's docket in the Action.

9.3.    Exhibits and Headings.  The terms of this Settlement Agreement include the terms set forth in the attached Exhibits A, B, C, and D, which are incorporated by this reference as though fully set forth herein. The descriptive headings of any paragraphs of this Settlement Agreement are inserted for convenience only and do not constitute a part of this Settlement Agreement.

9.4.    Interim Stay of Proceedings/Reservation of Jurisdiction.  The Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

9.5.    Public Terms.  The Parties agree that this Settlement Agreement, including all the terms and conditions of this compromise settlement and any additional agreements relating to it, may be made public in their entirety, and Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

9.6.    Amendment or Modification. This Settlement Agreement may be amended or modified only by a written instrument signed by Defense and Class Counsel or their successors-in-interest and/or the Parties.

9.7.    Entire Agreement. This Agreement constitutes the full, complete, and entire understanding, agreement, and arrangement between Plaintiffs and the Class Members on the one hand, and Defendants on the other hand, with respect to the Settlement of the Action, the Settled Claims, and the Released Parties. This Agreement supersedes any and all prior oral or written

39

understandings, agreements, and arrangements, including the Settlement Term Sheet, between the Parties with respect to the Settlement of the Action and the Settled Claims against the Released Persons. Except for those set forth expressly in this Agreement, there are no other agreements, covenants, promises, representations, or arrangements between the Parties with respect to the Settlement of the Action or the Settled Claims against the Released Parties.

9.8.    Authorization to Enter into Settlement Agreement.  The person or persons signing this Settlement Agreement on behalf of a Party or Parties represent and warrant that he, she, or they is or are authorized to sign this Settlement Agreement on behalf of that Party or Parties.  Each Plaintiff represents and warrants that he, she, or they is or are authorized to sign this Settlement Agreement and that he, she, or they has or have not assigned any Claims covered by this Settlement to a third-party.  Each Plaintiff, by signing this Settlement Agreement, is bound by the terms herein and further agrees not to submit any Opt-Out Request or Notice of Objection to the Class Settlement.  Any such Opt-Out Request or Notice of Objection shall therefore be void and of no force or effect.

9.9.    Signature of All Class Members Unnecessary to be Binding.  The Parties agree that because the Class Members are numerous, it is impossible or impractical to have each Class Member execute this Agreement.  The Notice will advise all Class Members of the binding nature of the release provided herein and shall have the same force and effect as if each Class Member executed the Agreement.

9.10.    Binding on Successors and Assigns.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

40

9.11. <u>Captions</u>. The captions and paragraph numbers in this Agreement are inserted for the reader's convenience and in no way define, limit, construe, or describe the scope or intent of the provisions of this Agreement.

9.12. <u>Tennessee Law Governs</u>. All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Tennessee, without reference to conflict of law principles.

9.13. <u>Mutual Cooperation</u>. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including, but not limited to, execution of such documents and to take such other action as may be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all reasonable efforts contemplated by this Agreement and any other reasonable efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

9.14. <u>Mutual Preparation</u>. The Parties have jointly negotiated the terms and conditions of this Agreement. Accordingly, this Agreement shall not be construed more strictly against one party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

9.15. <u>Severability</u>. The Parties to this Agreement agree, covenant, and represent that each and every provision of this Agreement shall be deemed to be contractual, and that they shall not be treated as mere recitals at any time or for any purpose. Therefore, the Parties further agree, covenant, and represent that each and every provision of this Agreement shall be considered severable, except

41

distribute funds to the Qualified Class Members, Class Counsel, and Plaintiffs as provided by this Agreement.

9.18. <u>Retention of Jurisdiction</u>. The Parties agree to ask the Court to retain jurisdiction of this matter solely to enforce the terms of this Settlement, except to the extent that another court may have exclusive subject matter jurisdiction.

9.19. <u>Action to Enforce Agreement</u>. In any suit or court action to enforce this Agreement, the substantially prevailing party shall be entitled to recover his, her, its, or their attorneys' fees and costs.

9.20. <u>Authorization by Plaintiffs</u>. Plaintiffs authorize Class Counsel to sign this Agreement and further agree not to request to be excluded from the Class pursuant to Section 7.6 and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect.

9.21. <u>Counterparts</u>. This Settlement Agreement shall become effective upon its execution by all the undersigned. Plaintiffs, Class Counsel, and Defendants may execute this Settlement Agreement in counterparts, which shall have the same force and effect as if each had signed the same instrument. Signatures to this Agreement may be delivered by the Parties by electronic transmission and any signature so transmitted shall be deemed an original signature that shall be legally binding upon transmission by a Party to the other Parties

IN WITNESS WHEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

43

## SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT

### Declaration of Isabel Zelaya

I, Isabel Zelaya, certify under penalty of perjury under the law of the United States that the foregoing Release and Settlement Agreement has been read to me in Spanish, and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed, this __12__ day of __Octubre__, 2022.

_____ Isabel ZELAYA
Isabel Zelaya

I, __Julia Solórzano__, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Isabel Zelaya who affirmed that he understood its contents.

_Julia Solórzano_
__10/12/22__
Date

44

## SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT

### Declaration of Geronimo Guerrero

I, Geronimo Guerrero, certify under penalty of perjury under the law of the United States that the foregoing Release and Settlement Agreement was read to me in Spanish and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed this ___12___ day of ___octubre___, 2022.

_G. Guerrero_
Geronimo Guerrero

I, _Michelle Lapointe_, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Geronimo Guerrero who affirmed that he understood its contents.

_[signature]_
10 / 12 / 22
Date

45

## SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT

### Declaration of Carolina Romulo Mendoza

I, Carolina Romulo Mendoza, certify under penalty of perjury under the law of the United States that the foregoing Release and Settlement Agreement was read to me in Spanish and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed this _12_ day of _Octubre_, 2022.

_Carolina Romulo Mendoza_
Carolina Romulo Mendoza

I, _Joanna Elise Cuevas Ingram_, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Carolina Romulo Mendoza who affirmed that he understood its contents.

_October 12, 2022_
Date

46

## SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT

### Declaration of Martha Pulido

I, Martha Pulido, certify under penalty of perjury under the law of the United States that the foregoing Release and Settlement Agreement was read to me in Spanish and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed this ___12___ day of ___OCTUBRE___, 2022.

_____
Martha Pulido

I, _Meredith Stewart_, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Martha Pulido who affirmed that she understood its contents.

_____

___10 - 12 - 2022___
Date

47

<u>SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT</u>

### Declaration of Catarino Zapote Hernandez

I, Catarino Zapote Hernandez, certify under penalty of perjury under the law of the United States the foregoing Release and Settlement Agreement was read to me in Spanish and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed this __19__ day of __Octubre__, 2022.

_____
Catarino Zapote Hernandez


I, __Norma Ventura__, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Catarino Zapote Hernandez who affirmed that he understood its contents.

_____
__10/12/2022__
Date

48

## SIGNATURE PAGES FOR RELEASE AND SETTLEMENT AGREEMENT

### Declaration of Maria Del Pilar Gonzalez Cruz

I, Maria Del Pilar Gonzalez Cruz, certify under penalty of perjury under the law of the United States that the foregoing Release and Settlement Agreement was read to me in Spanish and that I have executed the Release and Settlement Agreement for the purposes contained therein. Further, I hereby assign to the Southern Poverty Law Center all my rights with respect to Attorney's Fees from the United States of America as set forth in this Agreement.

Signed this __12__ day of __octubre__, 2022.

_____
Maria Del Pilar Gonzalez Cruz

I, Joanna Elise Cuevas Ingram, certify under penalty of perjury of the laws of the United States of America that I am fluent in both the Spanish and English languages and that I read the foregoing Release and Settlement Agreement in Spanish to Maria Del Pilar Gonzalez Cruz who affirmed that he understood its contents.

_____
October 12, 2022
Date

49

# SIGNATURE PAGES FOR SETTLEMENT AGREEMENT

## Declaration of Nicholas R. Worsham

I, Nicholas R. Worsham, certify under penalty of perjury under the law of the United States that I have executed the Settlement Agreement on behalf of myself and the IRS Individual Defendants for the purposes contained therein.

Signed, this ___10TH___ day of ___OCTOBER___, 2022.

Nicholas R. Worsham

## SIGNATURE PAGES FOR SETTLEMENT AGREEMENT

### Declaration of Ronald J. Appel, Jr.

I, Ronald J. Appel, Jr. certify under penalty of perjury under the law of the United States that I have executed the Settlement Agreement on behalf of myself and the DHS Individual Defendants for the purposes contained therein.

Signed, this _____10th_____ day of _____October_____, 2022.


_Ronald J. Appel, Jr._
_____
Ronald J. Appel, Jr.

51

Meredith B. Stewart
SOUTHERN POVERTY LAW CENTER
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
T: (504) 486-8982
F: (504) 486-8947
meredith.stewart@splcenter.org

Eben P. Colby
500 Boylston Street
Boston, Massachusetts 02116
T: (617) 573-5855
F: (617) 305-4855
Eben.Colby@probonolaw.com

Jeremy A. Berman
One Manhattan West
New York, NY 10001
T: (212) 735-2032
F: (917) 777-2032
Jeremy.Berman@probonolaw.com

**Counsel for Plaintiffs**

Michelle Lapointe
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 247
Decatur, GA 30031
T: (213) 279-2508
F: (213)-639-3911
lapointe@nilc.org

John L. Farringer IV (No. 22783)
SHERRARD ROE VOIGT & HARBISON,
PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
T: (615) 742-4200
F: (615) 742-4539
bharbison@srvhlaw.com
jfarringer@srvhlaw.com

Phillip F. Cramer (No. 20697)
SPERLING & SLATER P.C.
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
T: (312) 641-3200
F: (312) 641-6492
pcramer@sperling-law.com

52

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

By: _____
    Charles K. Grant
    Tom Aumann
    Clarence Risin
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
cgrant@bakerdonelson.com
taumann@bakerdonelson.com
crisin@bakerdonelson.com

*Counsel for the IRS Non-Planner Defendants*

MILLER & MARTIN PLLC

By: _____
    Donald J. Aho
    Zachary H. Greene
    Bradford G. Harvey
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone (423) 756-6600
don.aho@millermartin.com
zac.greene@millermartin.com
brad.harvey@millermartin.com
Alexander C. Vey
2100 Regions Plaza
1180 West Peachtree Street, NW
Atlanta, Georgia 30309
alex.vey@millermartin.com

*Counsel for the IRS Planner Defendants*

HUNTER SMITH DAVIS LLP

By: _____
    Jimmie C. Miller
    Joseph B. Harvey
P.O. Box 3740
Kingsport, Tennessee 37664
Telephone (423) 378-8800

Stephen M. Darden
100 Med Tech Parkway, Suite 110
Johnson City, Tennessee 37604
sdarden@hsdlaw.com

*Counsel for the DHS Non-Planner Defendants*

WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC

By: _____
    J. Ford Little
    J. Chadwick Hatmaker
    Kaitlyn E. Hutcherson
900 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37901
Telephone (865) 215-1000
flittle@wmbac.com
chatmaker@wmbac.com
khutcherson@wmbac.com
*Counsel For Defendants Ronald J. Appel, Travis E. Carrier, Trevor W. Christensen, Dennis M. Fetting, Robert Hammer, and Trey Lund*

53

LEWIS THOMASON, P.C.

By: _Mary Ann Stackhouse_
    Mary Ann Stackhouse
    Lynn C. Peterson
P.O. Box 2425
Knoxville, Tennessee 37901
Telephone (865) 546-4646
*Counsel for Defendant John Witsell*

UNITED STATES OF AMERICA

By:_____
    Laura Day Taylor
    Krista Consiglio Frith
    Kari Munro
Office of the United States Attorney
    for the Western District of Virginia
P.O. Box 1709
Roanoke, Virginia 24008-1709
Telephone (540) 857-2250
laura.taylor@usdoj.gov
krista.frith@usdoj.gov
kari.munro@usdoj.gov

*Counsel for the United States of America,
Acting Under Authority Conferred by 28 U.S.C.
§ 515*

54

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

By:_____
   Charles K. Grant
   Tom Aumann
   Clarence Risin
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Telephone (615) 726-5600
cgrant@bakerdonelson.com
taumann@bakerdonelson.com
crisin@bakerdonelson.com

*Counsel for the IRS Non-Planner Defendants*


**MILLER & MARTIN PLLC**

By:_____
   Donald J. Aho
   Zachary H. Greene
   Bradford G. Harvey
1200 Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone (423) 756-6600
don.aho@millermartin.com
zac.greene@millermartin.com
brad.harvey@millermartin.com
Alexander C. Vey
2100 Regions Plaza
1180 West Peachtree Street, NW
Atlanta, Georgia 30309
alex.vey@millermartin.com

*Counsel for the IRS Planner Defendants*


**LEWIS THOMASON, P.C.**

By:_____
   Mary Ann Stackhouse
   Lynn C. Peterson
P.O. Box 2425


**HUNTER SMITH DAVIS LLP**

By:_____
   Jimmie C. Miller
   Joseph B. Harvey
P.O. Box 3740
Kingsport, Tennessee 37664
Telephone (423) 378-8800

Stephen M. Darden
100 Med Tech Parkway, Suite 110
Johnson City, Tennessee 37604
sdarden@hsdlaw.com

*Counsel for the DHS Non-Planner Defendants*


**WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**

By:_____
   J. Ford Little
   J. Chadwick Hatmaker
   Kaitlyn E. Hutcherson
900 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37901
Telephone (865) 215-1000
flittle@wmbac.com
chatmaker@wmbac.com
khutcherson@wmbac.com
*Counsel For Defendants Ronald J. Appel, Travis E. Carrier, Trevor W. Christensen, Dennis M. Fetting, Robert Hammer, and Trey Lund*


**UNITED STATES OF AMERICA**

By:_____
   Laura Day Taylor
   Krista Consiglio Frith

53

Knoxville, Tennessee  37901
Telephone (865) 546-4646
***Counsel for Defendant John Witsell***

Kari Munro
Office of the United States Attorney
  for the Western District of Virginia
P.O. Box 1709
Roanoke, Virginia  24008-1709
Telephone (540) 857-2250
laura.taylor@usdoj.gov
krista.frith@usdoj.gov
kari.munro@usdoj.gov

***Counsel for the United States of America, Acting Under Authority Conferred by 28 U.S.C. § 515***

# EXHIBIT A

Class Notice

# NOTICE OF PROPOSED CLASS-ACTION SETTLEMENT

**(in *Zelaya, et al. v. Hammer, et al.*, Case No. 3:19-cv-00062-TRM-CHS)**

- **If you are a Latino worker who was detained during the Department of Homeland Security (DHS) and Internal Revenue Service (IRS) enforcement operation at the Southeastern Provision meatpacking plant on April 5, 2018 in Bean Station, Tennessee, a proposed class-action settlement may affect your rights. Please read this notice carefully.**

- Your rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will only be made if the Court approves the settlement and after any appeals are resolved.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM** | The only way to get a payment is to submit a Claim Form. |
| **EXCLUDE YOURSELF** | Get no payment or access to the letter from the government identifying you as a class member. This is the only option that allows you to be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

1

| **DO NOTHING** | Get no payment. Give up rights. |
|---|---|

## 1.  What is this Notice about?

This Notice is an official court notice to let you know about a proposed Settlement in this class-action lawsuit and how you may claim a share of the Settlement. You are considered a class member in this case if you are a Latino individual who worked at the Southeastern Provision meatpacking plant in Bean Station, Tennessee and were detained during the enforcement operation that occurred on April 5, 2018. If you do not think the settlement is fair, you can object, and this Notice will tell you how to make such an objection. This notice also informs you of your rights if you do not want to be a member of the class.

## 2.  What is the lawsuit about?

In 2019, the individuals who filed this lawsuit claimed that their civil rights were violated during an enforcement operation at the Southeastern Provision meatpacking plant on April 5, 2018. The lawsuit was filed against the Defendants, who are agents from the Department of Homeland Security and the Internal Revenue Service, as well as the federal government. The lawsuit alleged that the Defendants planned and executed the enforcement operation on April 5, 2018, and that they unlawfully seized and arrested approximately 100 Latino workers on the basis of their race and ethnicity. This conduct was alleged to violate the Latino workers' civil rights under two federal statutes, 42 U.S.C. §§ 1985(3) & 1986. The individuals who filed the lawsuit also brought individual claims for damages under the Federal Tort Claims Act, and one individual plaintiff also brought an individual claim against one individual defendant. The Defendants deny they did anything wrong or violated any laws. The name of this case is *Zelaya, et al. v. Hammer, et al.*, Civil Case No. 3:19-CV-00062-TRM-CHS.

### 3. What is a "class-action" lawsuit?

In a class-action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The Court will resolve the issues for all Class Members, except those who voluntarily exclude themselves from the Class. In this case, Maria Del Pilar González Cruz and Catarino Zapote Hernández were appointed by the Court to represent a Class of Latino individuals who worked at the Southeastern Provision meatpacking plant in Bean Station, Tennessee and were detained during the enforcement operation on April 5, 2018. United States District Court Judge Travis R. McDonough is in charge of this class-action case, located in the U.S. District Court for the Eastern District of Tennessee.

### 4. What is the current status of the lawsuit?

Since early 2020, the parties have been engaged in discovery in order to prepare for trial, which means they have exchanged many documents related to the enforcement operation and have taken numerous depositions (sworn testimony). On August 9, 2022, the Court decided, based on evidence submitted by the parties, that the lawsuit should move forward as a "class-action" lawsuit. The Court appointed Maria Del Pilar González Cruz and Catarino Zapote Hernández to represent the interests of the Class. Soon after the Court certified the lawsuit as a class-action case, the parties engaged in a mediation and agreed to the proposed Settlement. Defendants raised numerous defenses that could significantly reduce or even eliminate any liability or damages to the Class. Accordingly, there were significant risks to the Class in continuing the lawsuit and significant benefits to settling the lawsuit short of trial. Having considered the benefits and risks associated with further litigation, the Class Representatives and their attorneys think the Settlement is fair and provides the best relief for everyone who had claims in this lawsuit. The Court also has reviewed the terms of the Settlement and preliminarily approved the Settlement as fair and reasonable to the Class. **Your rights could be affected by this Settlement, so you should read this Notice carefully to decide whether you want to be part of the Class and you think the Settlement is fair.**

## 5. Do I have a lawyer in this case?

The Court appointed the National Immigration Law Center, the Southern Poverty Law Center, Eben Colby, Jeremy Berman, Art Bookout, and Sherrard Roe Voigt & Harbison, PLC to represent Class Members. These attorneys' services are free to you as a Class Member. If you are part of the Class, you will not have to pay any attorneys' fees or any other costs of bringing this lawsuit. If you have any questions concerning this lawsuit, please call the lawyers at:

**Toll free telephone from the United States: 1-800-591-3656**
**Toll free telephone from Mexico: 001-800-591-3656**
**From any other country, collect to: 404-521-6700**

## 6. How do I know if I am part of the proposed Settlement?

The Court certified the following "Class" in this case: **All Latino individuals working at the Southeastern Provision meatpacking plant in Bean Station, Tennessee on April 5, 2018 who were detained.** If you are member of this Class, you can participate in the proposed Settlement.

## 7. What if I am not sure if I am part of the proposed Settlement?

If you are not sure whether you are part of the proposed Settlement, you can call the attorneys for the Plaintiffs and the Class Members at **1-800-591-3656**. If you are calling from Mexico, please dial toll free **001-800-591-3656.** From any other country you can call collect to 404-521-6700.

## 8. What are the terms of the Proposed Settlement?

The proposed Settlement between the Class and the Defendants is set forth in detail in the terms and conditions of the Settlement. It is also available here: [insert link]. The Settlement fully releases all claims for civil rights violations that allegedly occurred or any other claims that could have been asserted as a result of or relating to the enforcement operation on April 5, 2018 at Southeastern Provision. Under the proposed Settlement, the Defendants will pay the Class a Monetary Payment of $550,000. If the Court approves the Settlement, each eligible Class Member who

4

files a valid and timely claim will receive an equal portion of the Class Monetary Payment of $550,000. The payment for each Class Member is estimated to be around $5,000-6,000, although the exact amount will not be known until after Class Members submit Claims requesting payments. It is important to understand that the anticipated payment figure represents a gross amount, without withholding or other taxes taken out. It is important that you understand the settlement payment may need to be reported to the IRS as "miscellaneous income."

The proposed Settlement also establishes a process for Class Members to request confirmation of their membership in the *Zelaya* class through a centralized email address. Class members may obtain a letter from ICE and the U.S. Attorney's Office for the Western District of Virginia, which may then be submitted by Class Members in support of any application they make for immigration relief or any other purpose for which the Class Member seeks to use it. Further information about that process is below.

## 9. Who else gets money from the Proposed Settlement?

The six named Plaintiffs with individual claims under the Federal Tort Claims Act, including the one named Plaintiff with an individual claim against an individual defendant, will receive a monetary payment for settlement of those claims. Class representatives González Cruz and Zapote Hernández will receive $36,893.20 each for settlement of their Individual Federal Tort Claims Act claims.

Any money that is not claimed by Class Members after the first payment will be redistributed to the Class Members. If the total amount not claimed by Class Members is under $40,000, it will be donated to the McNabb Center in Morristown, Tennessee.

The Settlement also provides $150,000 to the attorneys for the Plaintiffs and the Class to cover expenses and fees.

## 10. What is the centralized process that is created by the Proposed Settlement?

Under the proposed Settlement, Immigration and Customs Enforcement (ICE) and the U.S. Attorney's Office for the Western District of Virginia have agreed to sign a joint letter confirming that the individual is a member of the Class and separately was part of a U.S. Department of Labor lawsuit about exploitative labor

5

practices. The Class member will then be able to use this letter in support of an application for deferred action or for any other purpose the individual seeks to use it (including in any pending immigration proceedings). ICE will also set up and monitor an email account for Class Members to send requests for confirmation of class membership. Please contact class counsel at the numbers below to obtain the email address to submit your request for a letter from ICE and the U.S. Attorney's Office for the Western District of Virginia. This process does not guarantee any immigration relief. However, it will facilitate Class members' ability to be recognized as members of the *Zelaya* Class as part of applications for immigration relief.

| 11. | What are my rights as a member of the Class? |
| --- | --- |

As a member of the Class, you have the right to receive money from the Settlement. In addition, the government will sign a letter that corroborates your membership in the Class, which you will be able to use as part of a process to submit applications for immigration relief. As a member of the Class, you are also giving up your rights to bring a separate claim against the Defendants for civil rights violations that allegedly occurred or any other claims that could have been asserted as a result of or relating to the enforcement operation on April 5, 2018 at Southeastern Provision.

| 12. | How do I make my claim as a Class member? |
| --- | --- |

**TO CLAIM YOUR MONEY YOU MUST FILE A CLAIM FORM.**

A Claim Form is included with this Notice. The Claim Form already has your name on it and the approximate payment. You must provide a tax identification number; otherwise, you will be subject to tax withholding from your settlement amount. If you are not subject to tax withholding, the settlement amount you receive may be treated as "miscellaneous income," and you will be responsible for any taxes owed.

If you want to file a claim to receive your money, you should fill out the Claim Form and return it by mail to Settlement Services, Inc. You can also fax the form to (850) 385-6008 or email it to claims@ssiclaims.com. Your Claim Form must be **postmarked** (if you send it by mail) or **received** (if you send it by fax or e-mail) before **[date]** for you to be eligible to receive payment. It is a good idea to call the class counsel after you send your Claim Form to confirm that it was received.

6

**You do not have to be present at the hearing to receive your share of the settlement money. If you submit a claim to get your share of the Settlement, you will receive your class share, provided the Settlement is approved by the Judge.**

| 13. | When and how will I receive my payment? |
|---|---|

Class members residing in the United States will be mailed a check to the address you indicate on your Claim Form. We will make arrangements to send payments to Class Members residing outside of the United States via Western Union or via a bank account transfer. For this reason, **IT IS VERY IMPORTANT THAT THE ATTORNEYS HAVE YOUR CURRENT CONTACT INFORMATION. YOU WILL LOSE YOUR RIGHT TO ANY SETTLEMENT MONEY IF YOU FAIL TO PICK UP YOUR MONEY OR CASH YOUR CHECK WITHIN 180 DAYS AFTER THE ATTORNEYS OR THEIR AGENTS NOTIFY YOU OF THE AVAILABILITY OF YOUR SETTLEMENT MONEY.**

| 14. | Will submitting a Claim Form for a money payment affect my immigration case or my ability to work in the United States in the future? |
|---|---|

No. Your filing a Claim to receive your part of the Class Monetary Payment will have no effect on your immigration case or ability to obtain authorization to work in the future. As noted above, as a *Zelaya* class member, you have the ability to seek a letter from the government that you can use in support of your immigration case.

| 15. | What if I do nothing at all? |
|---|---|

If you do nothing, then you will get no money from this Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit about the same claims that were or could have been asserted related to the subject of this lawsuit. You will also be legally bound by all of the orders the Court issues and judgments the Court makes in this class-action case.

## 16. How do I opt out of this class-action Settlement?

If you do NOT wish to be a part of this class-action Settlement, you have the right to be excluded from the Class and not receive any money from the Settlement, and you will not be able to avail yourself of the letter process described in section 10, above. If you ask to be excluded from the class, you will not be bound by the terms of this Settlement and will <u>not</u> be able to make any claim for the Settlement money or the letter from the government. However, you may have the right to bring your own lawsuit against the Defendants within the time period allowed under the law for the claims alleged in the lawsuit. To be excluded from the class-action Settlement, you must mail a letter to the Settlement Administrator, postmarked on or before _____, 2022, stating specifically that you want to opt-out of this case. You should mail this letter to:

> Settlement Services, Inc.
> PO Box 10269
> Tallahassee, FL, 32302-2269

You should include in your letter the name of the case (*Zelaya, et al. v. Hammer, et al.*) and the case number (3:19-CV-00062-TRM-CHS).

## 17. What if I think the Settlement is unfair?

There will be an in-person hearing to decide whether the Settlement is fair, reasonable, and adequate before U.S. District Court Judge Travis R. McDonough on _____, 2023 at _____ am/pm Eastern Standard Time, at the United States Courthouse, 900 Georgia Avenue, Room 317, Chattanooga, Tennessee 37402. If you want to object to the Settlement, then you must mail your objection to the Clerk of the Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402 (U.S.A.), postmarked on or before _____, 2023. You should include in your letter the name of the case (*Zelaya, et al. v. Hammer, et al.*) and the case number (3:19-CV-00062-TRM-CHS). You should also set forth all reasons you believe the Settlement should not be approved, with as much explanation as you desire to include. This hearing will be your only opportunity to object in person to the terms of the Settlement. The Judge will consider any timely objections you submit, even if you do not attend the in-person fairness hearing.

**You may file an objection even if you also submit a Claim Form.**

8

## 18.    What if I want further information?

If you have questions about the Settlement, need help understanding this Notice, or want a complete copy of the Settlement Agreement, you can contact the lawyers for the Plaintiffs and the Class by writing or calling:

**Southern Poverty Law Center**
**150 E. Ponce de Leon Ave., Suite 340**
**Decatur, GA 30030**

**Toll free telephone from the United States:**      **1-800-591-3656**
**Toll free telephone from Mexico:**      **001-800-591-3656**
**Or call collect to:**      **404-521-6700**
**Email:**      **casozelaya@splcenter.org**

**DO NOT CALL THE COURT OR THE CLERK OF THE COURT.**

# EXHIBIT B

## Claim Form

# SETTLEMENT CLAIM FORM

(in *Zelaya, et al. v. Hammer*, *et al.*, Case No. 3:19-cv-00062-TRM-CHS)

| SETTLEMENT PAYMENT |
| --- |

As a Class Member in *Zelaya v. Hammer*, you are entitled to receive a money payment of approximately $5,000 - $6,000.

| HOW DO I RECEIVE A PAYMENT? |
| --- |

In order to receive the settlement payment, you **MUST** complete this form and return it in one of the following ways:

**Mail** this completed form to the following address:

> Zelaya Settlement
> Settlement Services, Inc (SSI)
> PO Box 10269
> Tallahassee, FL, 32302-2269

Or, **fax** this completed form to SSI at: (850) 385-6008

Or, **email** this completed form to SSI at: claims@ssiclaims.com

| WHAT IS THE DEADLINE FOR SENDING MY FORM? |
| --- |

**REMEMBER, your form must be RECEIVED by SSI before [ENTER DATE].**

If you do not exclude yourself from this case, then you must file a Claim Form in order to receive your payment. If we do not RECEIVE your Claim Form by [ENTER DATE], you will have given up your right to receive any money from this Settlement.

## PLEASE FILL OUT THE OTHER SIDE OF THIS FORM.

## INFORMATION ON HOW TO CONTACT YOU

Your Name: _____     Date of Birth: _____

Social Security Number OR
Individual Taxpayer Identification Number: _____

Phone number(s): _____

Email address: _____

Address in U.S.: _____

_____

Address in foreign country: _____

_____

Where should your check be mailed: _____ U.S. Address _____ Foreign Address

**If you would like to receive your payment via bank wire transfer or Western Union, please call our office at the numbers below.**

I wish to receive my share of the settlement proceeds in the case of *Zelaya, et al. v. Hammer, et al.*

_____          _____
Date                                              Signature

## HOW CAN I GET MORE INFORMATION?

You can get more information by contacting the attorneys at the Southern Poverty Law Center and National Immigration Law Center:

**Toll free telephone from the United States:**    **1-800-591-3656**
**Toll free telephone from Mexico:**    **001-800-591-3656**
**Or call collect to:**    **404-521-6700**
**Email:**    **casozelaya@splcenter.org**

# EXHIBIT C

## Class Member Letter

[Name of Class Member]

[address/contact information provided]


Re:    **Confirmation of Class Membership in *Zelaya et al. v. Hammer et al.***


To Whom it May Concern:

The United States Attorney's Office for the Western District of Virginia and U.S. Immigration and Customs Enforcement (ICE) are in receipt of [name of class member's] request to confirm your status as a class member in the certified class in the *Zelaya et al. v. Hammer et al.* case in the United States District Court for the Eastern District of Tennessee (Case No. 3:19-cv-00062-TRM-CHS).[1]

On August 9, 2022, the U.S. District Court of the Eastern District of Tennessee certified the following class: "[a]ll Latino individuals working at the Southeastern Provisions meatpacking plant in Bean Station, Tennessee on April 5, 2018, who were detained." Class members were detained as part of the execution of a federal search warrant against the plant's owner and enforcement operation on April 5, 2018, at the Southeastern Provision, LLC meatpacking plant in Bean Station, Tennessee.

The parties in the *Zelaya* litigation have executed a settlement agreement, which includes the issuance of this letter to confirm membership in the certified class that individuals may submit with any immigration application.[2] This letter does not confer any lawful status, immigration relief, or immigration benefit of any kind to the class member.

Based on available records, ICE confirms [class member's name] is a member of the certified class in *Zelaya v. Hammer*.

---

[1] This lawsuit was brought by individual plaintiffs against the United States pursuant to the Federal Tort Claims Act, and on behalf of a class against ninety-two federal agents under 42 U.S.C. §§ 1985(3), 1986 and *Bivens*.

[2] In addition to and separate from the *Zelaya* litigation, the United States Department of Labor (DOL) reached a consent order and permanent injunction under the Fair Labor Standards Act relating to payment of unpaid overtime wages to Southeastern Provision workers in *Scalia v. Southeastern Provision, LLC* (JRG2) (Case No. 3:19-cv-00150, Eastern District of Tennessee). The *Zelaya* class members were also part of this labor dispute with Southeastern Provision, LLC and James Brantley.

1

Please note that, consistent with DHS policy and federal law, retaliation for participation in a lawsuit against the federal government is prohibited.

Please contact AUSA Laura Day Taylor at laura.taylor@usdoj.gov or [ICE Rep] at [ ] should you have any questions.

Thank you.


[USA and ICE Rep Sigs]

# EXHIBIT D

Next of Kin Release

ISABEL ZELAYA, et al.,

     *Plaintiffs*,

v.

ROBERT HAMMER, et al.,

     *Defendants*.

No. 3:19-cv-00062-TRM-CHS

CLASS ACTION

**NEXT OF KIN INDIVIDUAL RELEASE OF CLAIMS
PURSUANT TO SETTLEMENT AGREEMENT**

1.     I hereby sign and execute the following release for the purpose of fully and finally settling the claims of _____ against the United States, the individual DHS Defendants, and the individual IRS Defendants, pursuant to the Settlement Agreement dated October 12, 2022 (the "Settlement").

2.     I hereby acknowledge that as consideration, I will receive a [check/money transfer] in the amount of _____.

3.     I affirm that I am the [spouse/child/sibling] of _____, who died in _____, [Country]. As his next of kin, I am legally entitled to his share of the Settlement Funds.

4.     In consideration of the execution of the Settlement, I shall be fully bound by the Settlement, including the release provisions in Section 5.

5.     I have had the opportunity to consult with legal counsel prior to signing this Individual Release and to review and understand the Settlement. I affirm and guarantee that I am of legal age and legally competent to sign this Individual Release, which I have done of my own free will.

1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Full Name

_____
Signature

_____
Date